No. 2--04--0045

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

______________________________________________________________________________

JLR INVESTMENTS, INC., HOUSING ) Appeal from the Circuit Court

RESOURCES COMPANY, L.L.C., and ) of McHenry County.

GATEWAY COMPANY, L.L.C., )

)

Petitioners-Appellees, 
) 

)

v. ) No. 01--MC--2

)

THE VILLAGE OF BARRINGTON HILLS, ) Honorable

) Michael J. Sullivan,

Respondent-Appellant. ) 
Judge, Presiding.

_____________________________________________________________________________

JUSTICE BOWMAN delivered the opinion of the court:

Petitioners, JLR Investments, Inc. (JLR), Housing Resources Company, L.L.C. (Housing Resources), and Gateway Company, L.L.C. (Gateway), petitioned under section 7--3--6 of the Illinois Municipal Code (disconnection statute) (65 ILCS 5/7--3--6 (West 2002)) to disconnect property from the Village of Barrington Hills (Village) and connect the property to unincorporated McHenry County.  The trial court granted their petition, and the Village appeals.  We affirm.

I.  BACKGROUND

On May 2, 2001
, JLR petitioned to disconnect 368.3 acres of land (the property) 
from the Village, under the disconnection statute.  The property is zoned as an "R-1" single-family residence district, as is over 90% of the Village.  R-1 zoning requires single-family homes on lots of a minimum of five acres.  The property contains three homes and six residents, and it represents about 2% of the Village's total area of 28 square miles.

The disconnection statute states, in relevant part:

"The owner or owners of record of any area of land consisting of one or more tracts, lying within the corporate limits of any municipality may have such territory disconnected which (1) contains 20 or more acres; (2) is located on the border of the municipality; (3) if disconnected, will not result in the isolation of any part of the municipality from the remainder of the municipality[;] (4) if disconnected, the growth prospects and plan and zoning ordinances, if any, of such municipality will not be unreasonably disrupted[;] (5) if disconnected, no substantial disruption will result to existing municipal service facilities, such as, but not limited to, sewer systems, street lighting, water mains, garbage collection and fire protection[;] (6) if disconnected the municipality will not be unduly harmed through loss of tax revenue in the future.  The procedure for disconnection shall be as follows:  The owner or owners of record of any such area of land shall file a petition in the circuit court of the county where the land is situated, alleging facts in support of the disconnection.  The municipality from which disconnection is sought shall be made a defendant, and it, or any taxpayer residing in that municipality, may appear and defend against the petition.  If the court finds that the allegations of the petition are true and that the area of land is entitled to disconnection it shall order the specified land disconnected from the designated municipality.  If the circuit court finds that the allegations contained in the petition are not true, the court shall enter an order dismissing the petition."  65 ILCS 5/7--3--6 (West 2002).
  

The Village moved to dismiss the petition under section 2--619 of the Code of Civil Procedure (Code) (735 ILCS 5/2--619 (West 2000)), arguing that JLR had failed to submit a written petition to the Village plan commission (Commission) and zoning board of appeals (Zoning Board), as required by the Village code.  The trial court denied the Village's motion.  

JLR and Housing Resources filed an amended petition on September 13, 2001, adding Housing Resources as a petitioner.  Petitioners filed a second amended petition on February 21, 2002, adding Gateway as a petitioner.  A trial was held from September 15, 2003, through September 19, 2003.  Prior to the trial, the Village stipulated that petitioners had established the first two requirements of the disconnection statute.  Thus, the evidence at trial was limited to requirements three through six.  On October 22, 2003, the trial court entered a memorandum opinion and order finding that petitioners had established these requirements by a preponderance of the evidence.  The Village moved to reconsider, and on December 17, 2003, the trial court denied the motion.  The Village timely appealed.  The Village argues that the trial court erred by denying its motion to dismiss, ruling in favor of petitioners, and denying its motion to reconsider.  

II.  ANALYSIS

A.  Motion to Dismiss

We first examine whether the trial court erred by denying the Village's motion to dismiss.  
The Village argues that the trial court should have dismissed the case because petitioners failed to comply with section 6--1--7 of the Village code (section 6--1--7) (Village of Barrington Hills Municipal Code §6--1--7 (1993)).  We review 
de novo
 
motions to dismiss under section 2--619 of the Code.  
Williams v. Davet
, 345 Ill. App. 3d 595, 598 (2003).  
 

Section 6--1--7 sets out the following procedure for disconnection.  A property owner wishing to disconnect property from the Village must submit a written petition to the Commission and the Zoning Board.  The petition must include an "inventory and analysis" of the property and surrounding land that considers: 

"topography; soils and geology; waterways, wetlands and drainage; vegetation; wildlife; historic features; adjacent land uses and zoning; utilities and related easements; riding trails, roadways and traffic circulation; and other information critical to an understanding of the capability of the territory to accommodate development."  Village of Barrington Hills Municipal Code §6--1--7(C)(2)(e) (1993).

The property owner must pay an initial retainer of $2,500 to cover Village costs for providing notice and reviewing the petition.  The property owner must also pay filing fees of $250 for 10 acres, plus $100 for each additional five acres.  The filing fees are limited to a maximum of $2,500 for 100 acres or less and $5,000 for 100 acres or more.  Village of Barrington Hills Municipal Code §6--1--7(D) (1993).
 

The Commission and Zoning Board hold either a joint public hearing
 or separate public hearings on the petition.  Village of Barrington Hills Municipal Code §6--1--7(G) (1993). 
 They then submit separate written reports and recommendations to the Village board of trustees (Village of Barrington Hills Municipal Code §6--1--7(I), (J) (1993))
, which will, in turn, pass a resolution approving or denying the petition (Village of Barrington Hills Municipal Code §6--1--7(K) (1993))
.  The property owner may appeal the board of trustees' decision by seeking review in the Cook County circuit court.  Village of Barrington Hills Municipal Code §6--1--7(L) (1993).  

Section 6--1--7 states that its provisions "shall supersede the disconnection provisions of sections 7-3-4 and 7-3-6 of the Illinois Municipal Code *** and shall constitute the sole and exclusive process and standards for disconnection of territory from the corporate limits of the Village of Barrington Hills."  Village of Barrington Hills Municipal Code §6--1--7(A) (1993)
.

Petitioners argue that section 6--1--7 is invalid, citing 
La Salle National Trust, N.A. v. Village of Mettawa
, 249 Ill. App. 3d 550 (1993).  There, the Village of Mettawa (Mettawa) had an ordinance requiring that a disconnection question be put to a vote in Mettawa if a court found that the disconnection petition met statutory requirements.  If the majority of residents voted against disconnection, there could be no further proceedings on the matter for at least 23 months.  
La Salle National Trust
, 249 Ill. App. 3d at 573.  The trial court ruled that the Mettawa ordinance was invalid and unenforceable, and this court affirmed.  We held that (1) disconnection is a matter of statewide concern that exceeded Mettawa's home rule powers, and (2) the ordinance improperly interfered with the state judicial system.  
La Salle National Trust
, 249 Ill. App. 3d at 577-78.

The Village argues that we should reexamine our reasoning in 
La Salle National Trust
.  The Village maintains that the State and home rule units have concurrent powers to regulate disconnection.  We initially note that section 6--1--7 
actually states that it "shall supercede" the disconnection statute and "constitute the sole and exclusive process and standards for disconnection of territory from" the Village.  Village of Barrington Hills Municipal Code §6--1--7(A) (1993)
.
  However, an ordinance cannot add to, subtract from, or affect a statute's provisions, and if the ordinance conflicts with the statute, it is invalid.  
Constantine v. Village of Glen Ellyn
, 217 Ill. App. 3d 4, 14 (1991).  
In any event, the Village maintains that disconnection is a matter of local concern as well as a state concern, because disconnection removes land from a local entity's zoning and land use restrictions and affects the entity's long-term use plan.  

The Illinois Constitution gives home rule units broad powers.  Ill. Const. 1970, art. VII, §6.  However, these powers are limited (1) by preemption (Ill. Const. 1970, art. VII, §6(i)) and (2) to matters "pertaining to its government and affairs" (Ill. Const. 1970, art. VII, §6(a)).  In 
La Salle National Trust
, we recognized that the legislature has not preempted the powers of home rule units regarding disconnection issues.  
La Salle National Trust
, 249 Ill. App. 3d at 574.  We also noted that disconnection is a matter affecting both the state and local governments, but we concluded that "the traditional role of the State and the State's vital interest in disconnection make disconnection primarily a matter of statewide concern
."  
La Salle National Trust
, 249 Ill. App. 3d at 575. 
 

The Village disagrees that state authorities have historically handled disconnection issues, stating that the disconnection statute does not, and has never, contained language making disconnection the exclusive task of the state.  
However, in our examination of the statute, we pointed out that the statute provides a municipality with only a limited role in a disconnection proceeding, supporting our interpretation that disconnection is a matter of statewide concern.  
La Salle National Trust
, 249 Ill. App. 3d at 577. 
 We also noted the following:  (1) municipal corporations are creatures of the state that are, absent constitutional restrictions, subject to the legislature's will and discretion (
La Salle National Trust
, 249 Ill. App. 3d at 575)
; (2) the legislature has the authority to fix and control the territory and boundaries of municipalities
; and (3) the parties had not cited a single case in which a local government exercised concurrent power with the state on a disconnection matter (
La Salle National Trust
, 249 Ill. App. 3d at 575-76).  
This reasoning also applies to the instant case.  Accordingly, we reaffirm our holding in 
La Salle National Trust
 that disconnection is a matter of statewide concern exceeding home rule powers.

Additionally, as in 
La Salle National Trust
, the Village ordinance is invalid because it interferes with the state judicial system.  As mentioned, section 6--1--7 
impermissibly seeks to supersede the disconnection statute.  See 
Constantine
, 217 Ill. App. 3d at 14.
  It also interferes with the disconnection statute by making disconnection more difficult, time-consuming, and expensive; it provides for a lengthy and involved process that a property owner must exhaust before being "allowed" to file an "appeal" in the circuit court.  Furthermore, it requires a property owner to bring his "appeal" in Cook County, contrary to the disconnection statute's provision that the claim be brought in the circuit court where the land is located, which is, in this case, McHenry County.  See 65 ILCS 5/7--3--6 (West 2002).
 

In sum, section 6--1--7 is invalid because it exceeds the Village's home rule powers and interferes with the state judicial system.  Therefore, the trial court did not err in denying the Village's motion to dismiss. 

B.  Disconnection Statute Requirements

We now turn to the Village's argument that the trial court erred in finding that petitioners met requirements three through six of the disconnection statute.  Though petitioners, as the parties seeking disconnection, had the burden of proving the statutory requirements (see 
City of DeKalb v. Town of Cortland
, 233 Ill. App. 3d 307, 310 (1992)), the disconnection statute is to be liberally construed in favor of disconnection (
Harris Trust & Savings Bank v. Village of Barrington Hills
, 133 Ill. 2d 146, 154-55 (1989)), regardless of the petitioner's purpose (
Indian Valley Golf Club, Inc. v. Village of Long Grove
, 135 Ill. App. 3d 543, 547 (1985))
.  The common theme is to allow disconnection absent a hardship or impairment to the municipality.  
Indian Valley Golf Club
, 135 Ill. App. 3d at 547. 
 We will not disturb the trial court's finding that petitioners established the statutory requirements for disconnection unless the finding is clearly contrary to the manifest weight of the evidence.  
City of DeKalb
, 233 Ill. App. 3d at 310.  
A decision is against the manifest weight of the evidence only when the opposite conclusion is apparent or when findings appear to be arbitrary, unreasonable, or not based on evidence.  
Construx of Illinois, Inc. v. Kaiserman
, 345 Ill. App. 3d 847, 858 (2003).

1.  Isolation

The third requirement of the disconnection statute is that the proposed disconnection not isolate any part of the municipality from the remainder of the municipality.  65 ILCS 5/7--3--6 (West 2002).
 
 A property is isolated from a municipality if it is not contiguous to it.  
Indian Valley Golf Club
, 135 Ill. App. 3d at 548.  Contiguity exists where tracts of land adjoin each other in "a reasonably substantial physical sense."  
Indian Valley Golf Club
, 135 Ill. App. 3d at 549. 
 The contiguity requirement is satisfied by a substantial common boundary or a common border of reasonable length.  The line of demarcation between the reasonableness or unreasonableness of a contiguity depends on the facts of the case, and the irregularity of resulting boundaries does not automatically prohibit a finding of contiguity.  
Indian Valley Golf Club
, 135 Ill. App. 3d at 549.
   
 

The disconnection of the property at issue creates a "T"-shaped corridor connecting approximately 167 acres in the northwest corner of the Village to the remainder of the Village (see map).  With respect to this corridor, the parties stipulated the following:

"b.  Corridor at north end of property to be disconnected has 512.22 feet of connection with the Village of Barrington Hills on west end of Haegers Bend Road.

c.  From Haegers Bend Road, east along Chapel Road, there is a point of connection of approximately 515 feet in depth and approximately 1,269 feet in length to a three-lot subdivision in Barrington Hills.

d.  Proceeding east from the three-lot subdivision, along Chapel Road, there is a point of connection of approximately 515 feet in depth and approximately 2,306 feet in length.  

e.  Corridor has 302.70 feet of connection with the Village of Barrington Hills at east end of property to be disconnected."

The parties do not dispute that the parcels of land constituting the corridor are connected and adjacent to one another.  

At trial, petitioners' expert testified that the disconnection would not isolate any portion of the Village because all portions of the Village would still be in contact and that the land remaining in the corridor could still be developed for nine five-acre residential lots.  The Village's expert 
testified that
 the corridor was about 7½ times as long as it was wide and would isolate the property in the northwest corner of the Village.

The Village argues that the disconnection would isolate the property in the northwest corner of the Village because the total corridor is "515 feet wide and approximately 4,200 feet long (5,280 feet comprises a mile)."  The Village cites 
In re Incorporation of a Village to be Known as the Village of Mitchell
, 316 Ill. App. 3d 284 (2000) (strip 126 feet wide and 1,600 feet long did not create contiguity)
, and 
Gieseking v. Village of Harvel
, 24 Ill. App. 2d 440 (1960) (strip 2,640 feet long and 33 feet wide isolated village's 5-acre cemetery).  
However, 
Village of Mitchell
 is inapposite to this case because it involved an annexation with only a 126-foot common border (
Village of Mitchell
, 316 Ill. App. 3d at 291), and 
Gieseking
 is distinguishable because 
the strip constituted only 2 acres and was only 33 feet wide (
Gieseking
, 24 Ill. App. 2d at 441-42)
.  Here, the 45-acre corridor is about 515 feet wide and is connected to the Village by segments that are 512.22 feet 
wide on one end and 302.70 feet
 wide on the other.  

Courts have found that common boundaries smaller than the ones at issue in this case satisfy requirement three of the disconnection statute.  See 
Indian Valley Golf Club
, 135 Ill. App. 3d 543 (parcel 150 feet wide and 948 feet long did not isolate portion of municipality); 
La Salle National Bank v. Village of Burr Ridge
, 81 Ill. App. 2d 209 (1967) (two corridors measuring 2,400 feet by 170 feet and 1,300 feet by 170 feet were contiguous to the village and not isolated).  Based on the facts of this case, we conclude that the trial court's finding, that the disconnection of petitioners' property would not isolate any portion of the Village, was not against the manifest weight of the evidence.

2.  Growth Prospects and Plan and Zoning Ordinances

The disconnection statute's fourth requirement is that the proposed disconnection not "unreasonably" disrupt the municipality's "growth prospects and plan and zoning ordinances."  65 ILCS 5/7--3--6 (West 2002).  
Although the phrase "growth prospects" would appear to include consideration of future development, consideration is instead limited to the facts as they exist at the time of the hearing
, and neither the site's nor the municipality's future development is a proper consideration.  
La Salle National Trust
, 249 Ill. App. 3d at 567
.  The trial court must find that disconnection will not unreasonably affect growth prospects, " 'unless a municipality comes forward with evidence of existing definite, concrete and approved plans to further develop the property sought to be disconnected.' "  
La Salle National Trust
, 249 Ill. App. 3d at 567, quoting 
First National Bank of Mount Prospect v. Village of Mount Prospect
, 197 Ill. App. 3d 855, 860 (1990).  The fourth requirement focuses on the disruption that the disconnection will have on the growth prospects and plan and zoning ordinances of the municipality 
as a whole
, rather than the effect on a particular property remaining with the community.  
Harris Trust & Savings Bank
, 133 Ill. 2d at 155-56.    
  

The Village maintains that the disconnection will disrupt its comprehensive plan, a zoning ordinance, and a subdivision ordinance.  The comprehensive plan seeks to maintain the Village's semi-rural environment and limit population growth to 1.8% per year.  The zoning and subdivision ordinances have classified the property as R-1, which, as mentioned, requires that lots have a minimum of five acres.  Petitioners had presented a development plan to the Village, calling for the construction of up to 350 homes on 1.6-acre lots, along with a golf course and clubhouse, on 603 acres of property.  The Village denied their proposal because it conflicted with its goal of restraining development.  The Village contends that petitioners will seek to implement their plan in McHenry County if disconnection is allowed.  

We note that petitioner's proposed development plan is not a relevant consideration.  As stated, a court may consider facts only
 as they exist at the time of the hearing.  
La Salle National Trust
, 249 Ill. App. 3d at 567.  
The Village denied petitioners' plan, and our consideration of petitioners' pursuance and implementation of the plan, following disconnection, would be speculative.  Additionally, according to the testimony of both parties' planning and zoning experts, 
McHenry County would rezone the disconnected territory as 
an "A-1" agricultural district requiring minimum lot sizes of 40 acres.  This zoning requires much more land per lot than the Village's current zoning.  That petitioners would be able to obtain a zoning change in McHenry County and implement a development plan similar to the one that the Village rejected is, again, speculative.

Additionally, the Village relies on its comprehensive plan, but this court has previously held that a comprehensive plan is, by itself, insufficient to disrupt growth prospects.  
La Salle National Trust
, 249 Ill. App. 3d at 568.  The Village argues that although it may not have a definite plan regarding the property at issue, it would be unreasonable to expect it to come up with a development plan that is inconsistent with its long-standing goal of limited development.  However, the Village's desire to limit development is a consideration in that it relates to the Village's plan and zoning ordinances.  

As stated, 90% of the Village is zoned for five-acre lots.  The property constitutes just 2% of the Village, and, according to testimony at trial, it will be rezoned to require 40-acre lots following disconnection.  Therefore, the trial court's finding that the Village's growth prospects and plan and zoning ordinances would not be 
unreasonably disrupted by the disconnection is not against the manifest weight of the evidence. 

3.  Municipal Services

The fifth requirement of the disconnection statute is that "no substantial disruption will result to existing municipal service facilities, such as, but not limited to, sewer systems, street lighting, water mains, garbage collection and fire protection."  65 ILCS 5/7--3--6 (West 2002).
 
The parties stipulated that the Village does not provide the services specified by the statute.  However, the Village argues that if the property is disconnected, it will significantly affect the Village services of road maintenance, law enforcement, and its wireless 911 system.  

The Village's contentions regarding road services and police protection relate only to the impact of substantial development on the property.  As discussed, such development remains speculative and would require zoning changes by McHenry County.  Accordingly, the trial court's finding that the disconnection would not substantially disrupt these services is not against the manifest weight of the evidence.

We now turn to the Village's argument regarding its wireless 911 system.  The Village presented the following evidence at trial.  Towers containing three faces, or sectors, route wireless telephone calls.  Each of the tower's sectors has an assigned emergency service number (ESN) designating to which public safety answering point (PSAP) a wireless 911 call will be routed.  The Village has an emergency telephone system board (ETSB), which is in charge of planning and implementing its 911 system (see 50 ILCS 750/15.4 (West 2002)),
 and a PSAP.  McHenry County has its own ETSB and PSAPs.  

Seven wireless carriers serve the area around the property, and the Village receives "Phase 1" information from all of these carriers.  Phase 1 information includes which sector of which tower received the call, as well as the phone's number and registered owner.  Based on the Phase 1 information, the Village can determine where the call was made, within a three-mile radius.  The Village also receives "Phase 2" information from five of the seven wireless carriers.  Such information allows the Village to pinpoint a caller within 100 meters of his location.  Six of McHenry County's PSAPs receive Phase 1 information, but none of them is capable of receiving Phase 2 information.       
The Village has assigned ESNs for all of the tower sectors that include the Village in their coverage.  The Village receives calls from all areas covered by the sectors, including areas outside the Village's borders.  According to Village evidentiary exhibits, these areas include portions of unincorporated McHenry County.  The Village contends that the property's disconnection would require that the ESNs on some of the sectors be reassigned to the McHenry County ETSB, thereby depriving residents in the Village's northwest corner of the benefit of the Village's more advanced PSAP.  

At trial, petitioners' witness Theresa Carlson was accepted as an expert in McHenry County's 911 procedures.  She testified regarding the wireless 911 system as follows.  Wireless providers determine the locations of their cell towers and the orientation of the towers' sectors based on phone coverage concerns, not jurisdictional boundaries.  Carlson assigned ESNs to the sectors, and any changes to the ESNs would be her responsibility.  
If the property were disconnected, the ESNs would not change.  Even if the Village requested that the ESN change due to the disconnection, she would recommend to the McHenry County ETSB not to change the ESN, because most of the land being served by the tower sectors would still be in the Village.   

Based on Carlson's testimony, the disconnection would have no effect on the Village's wireless 911 service.  Furthermore, according to Village evidentiary exhibits, the Village receives wireless 911 calls from sections of McHenry County that are many times larger than the property.  This raises the question of why McHenry County would be required to receive the wireless 911 calls from the disconnected property even though it does not receive such calls from areas within its jurisdiction that the Village currently serves.

The Village does not address this question but instead cites section 10.2 of the Emergency Telephone System Act (Act) (50 ILCS 750/10.2 (West 2002)), which states:

"The Emergency Telephone System Board in any county passing a referendum under Section 15.3, and the Chairman of the County Board in any county implementing a 9-1-1 system shall ensure that all areas of the county are included in the system."  50 ILCS 750/10.2 (West 2002)
.   

According to the Village, if disconnection is allowed, this statute mandates the reassignment of sectors to McHenry County.

The trial court rejected this argument on the ground that section 2.12(c) of the Act (50 ILCS 750/2.12(c) (West 2002
)
) excludes cellular carriers.  This section states that for the purposes of the Act, " 'telecommunication carrier' does not include a cellular or other mobile communication carrier."  50 ILCS 750/2.12(c) (West 2002
).  However, the Village maintains that this definition is irrelevant to an ETSB's responsibilities, as set forth in section 10.2 of the Act.

We note that the trial court's conclusion is supported by the fact that a separate act, the Wireless Emergency Telephone Safety Act (Wireless Act) (50 ILCS 751/1 
et seq.
 (West 2002)), governs wireless 911 calls.  The Village points out that the Wireless Act defines an ETSB as providing "for the management and operation of a 9-1-1 system within the scope of the duties and powers prescribed by the" Act.  50 ILCS 751/10 (West 2002).  However, both acts' reference to the same board does not mean that an ETSB's responsibilities for wire 911 calls are the same as its responsibilities for wireless 911 calls.  See also 50 ILCS 751/15 (West 2002)
 ("Nothing in this [Wireless] Act shall require the provision of wireless enhanced 9-1-1 services").  Our interpretation is supported by the provisions of the Administrative Code recognizing that  jurisdictional boundaries for wire and wireless 911 calls may differ (83 Ill. Admin. Code §§728.210(c)(1)(B), (c)(1)(C) (2003)), as well as the fact that the Village currently receives wireless 911 calls from McHenry County.  
Additionally, the Village's interpretation could lead to the absurd result of requiring two counties that both have territory within a sector's coverage to provide wireless 911 service, even though the sector's ESN can be assigned to only one county's PSAP.  See 
In re Mary Ann P.
, 202 Ill. 2d 393, 406 (2002) (courts should construe statutes in a manner that avoids absurd, unreasonable, unjust, or inconvenient results).  

Thus, the trial court's finding that the Village's services would not be unreasonably disrupted is not against the manifest weight of the evidence.  As the Village's motion to reconsider reasserts the Village's argument that disconnection would impair its wireless 911 services, we hold that the trial court did not err in denying the motion.

4.  Tax Revenue

Under the disconnection statute's sixth requirement, property may be disconnected if the municipality will not be unduly harmed through the loss of future tax revenue.  65 ILCS 5/7--3--6 (West 2002).
 
 In making this determination, the trial court may consider the municipality's current and prospective financial condition.  
La Salle National Trust
, 249 Ill. App. 3d at 571.

   
The Village argues that the disconnection would cause a severe financial impact because if petitioners implement their development plan, the Village will incur millions of dollars in additional expenses for road expansion, road maintenance, and additional police protection, without the benefit of added tax revenue.  The Village's argument is without merit.  As discussed, the property's future development is speculative.  See 
La Salle National Trust
, 249 Ill. App. 3d at 572 (development of disconnection property, and tax revenue it could generate, was speculative).  Furthermore, the statute considers the loss of future tax revenue rather than a municipality's additional costs.   
  

The parties stipulated that "[t]hrough excellent fiscal management, the Village of Barrington Hills has, in the past, been able to avoid taking on debt and has been able to maintain a reserve fund."  Evidence at trial established that the Village had a reserve of over $1 million.  The property contributed $2,837 in property taxes for the Village's fiscal year that ended April 30, 2002, representing .06% of the Village's revenue from all sources.  Accordingly, we conclude that the trial court's finding that petitioners met the disconnection statute's sixth requirement is not against the manifest weight of the evidence.

For the foregoing reasons, we affirm the judgment of the McHenry County
 circuit court.

Affirmed.

McLAREN and BYRNE, JJ., concur.