LaSALLE BANK NATIONAL ASSOCIATION, Solely as Trustee Under Land Trust No. 120800—08, Petitioner-Appellant, v. THE VILLAGE OF BULL VALLEY, Respondent-Appellee.

Second District   No. 2—03—1249

Opinion filed March 3, 2005.

William J. McKenna, Jr., Melissa C. Brown, and Eric M. Phillips, all of Foley & Lardner, of Chicago, for appellant.

Michael J. Smoron, of Zukowski, Rogers, Flood & McArdle, of Crystal Lake, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

On March 12, 2003, petitioner, LaSalle Bank National Association (LaSalle), as trustee for Inland Real Estate (Inland), filed a petition to disconnect approximately 78.7 acres of property under section 7—3—6 of the Illinois Municipal Code (disconnection statute) (65 ILCS 5/7—3—6 (West 2002)). Based on the doctrine of collateral estoppel, the Village of Bull Valley (Village) moved to dismiss the disconnection petition under section 2—619 of the Code of Civil Procedure (Code) (735 ILCS 5/2—619 (West 2002)). The trial court granted the Village's mo-

tion to dismiss and dismissed with prejudice LaSalle's petition to disconnect. On appeal, LaSalle argues that its petition to disconnect is not barred by collateral estoppel. We reverse and remand.

## I. BACKGROUND

The facts relevant to this appeal are as follows. On April 25, 1995, a group of property owners filed a petition to annex their land to the Village (see 65 ILCS 5/7—1—2 (West 1994)). The Village was granted leave to intervene on May 1, 1995. Five principal objectors, who were owners of real estate or beneficial owners of trusts that own real estate, filed joint objections, seeking to have their land eliminated from the annexation. One of the objectors, Inland, with American National Bank and Trust Company of Chicago (American) as trustee, sought to remove parcel four from the annexation. According to Inland, the exclusion of parcel four would not destroy the contiguity with the Village. The Village countered that parcel four was required because, without it, there would be no contiguity with Susan Powers' property (Powers' property) and the rest of the Village.

Parcel four, consisting of approximately 98 acres, is west of and adjacent to another parcel owned by Inland, parcel two. Parcel two is approximately 18 acres. Both parcel four and parcel two touch the southern boundary of Powers' property along Queen Anne Road. Parcel two is 297 feet wide at its northern border, which runs along Queen Anne Road at the southwest corner of Powers' property. The northern boundary line of parcel four is 1,320 feet, with approximately 41 feet running adjacent to the southwest corner of Powers' property (see map).

At the hearing on the petition for annexation, Inland argued that the bulk of parcel four was not necessary to establish contiguity with Powers' property and the rest of the Village. Rather than parcel four in its entirety, Inland proposed that only a small portion of the eastern perimeter be included in the annexation petition. Inland maintained that parcel two, which bordered 297 feet of Powers' property, combined with the easternmost 3 feet of parcel four, would establish the necessary contiguity. In a written opinion dated February 20, 1997, the trial court rejected Inland's argument, determining that parcel four was necessary for the required contiguity. Hence, all of parcel four was included in the annexation petition. Inland filed a motion for reconsideration, modification, and/or vacation of final judgment, which the trial court denied on April 8, 1997.

Inland, with American as trustee, subsequently appealed. On appeal, Inland claimed that the trial court's decision to include parcel four in the territory subject to annexation was against the manifest

weight of the evidence. Although Inland conceded that the shared boundary between parcel two and Powers' property was substantial, 297 feet, it argued that the shared boundary between parcel four and Powers' property was minimal. We affirmed the trial court's decision, stating as follows:

"Having reviewed the record, we find that Inland parcel four was necessary for contiguity. Inland parcel four is west of and adjacent to Inland parcel two. Both Inland parcels touch the southern boundary of petitioner Powers' property along Queen Anne Road. The Powers[ ] property connects with Inland parcels two and four by 297 feet plus a certain distance. The 297 feet corresponds to parcel two and the additional distance corresponds to parcel four. Although the point of touching of petitioner Powers' property with Inland parcel four is minimal, the inclusion of Inland parcel four is necessary for contiguity with the territory sought to be annexed by petitioners. We therefore find that the trial court's decision not to exclude parcel four from the petition was not against the manifest weight of the evidence." *In re Petition for Annexation to the Village of Bull Valley*, No. 2—97—0423 (1997) (unpublished order under Supreme Court Rule 23).

On March 12, 2003, Inland, with LaSalle as trustee (LaSalle is the successor trustee to American), petitioned to disconnect certain property. Inland described the parcel to be disconnected as "[t]he East Half of the Southeast Quarter of Section 4, Township 44 North, Range 7 East of the Third Principal Meridian, in McHenry County, Illinois." The Village filed three requests to admit facts, asking Inland if the parcel legally described in the petition for disconnection was the same as parcel four. Inland responded that it lacked sufficient information to admit or deny the Village's request.

On April 11, 2003, the Village moved to dismiss Inland's disconnection petition under section 2—619 of the Code (735 ILCS 5/2—619 (West 2002)). In its motion to dismiss, the Village asserted that (1) Inland must show that disconnection of its property from the Village will not isolate any part of the municipality from the remainder of the municipality; (2) the contiguity issue was litigated in the trial court and the appellate court from June 14, 1995, to December 23, 1997; (3) both courts held that the parcel described in Inland's disconnection petition was necessary to achieve contiguity with Powers' property and the Village; and (4) because the threshold issue of contiguity or "isolation" had already been adjudicated, Inland was collaterally estopped from litigating it again.

On June 9, 2003, Inland requested leave to file a first amended petition for disconnection. In the amended petition, Inland revised the

legal description of the parcel sought to be disconnected. Inland now sought to disconnect:

"The East Half of the Southeast Quarter (Excepting the East 42.00 feet thereof) of Section 4, Township 44 North, Range 7, East of the Third Principal Meridian lying North of the North right-of-way line of Country Club Road, in McHenry County, Illinois."

The Village moved to dismiss Inland's first amended petition for disconnection. According to the Village, Inland's revised legal description was not a changed circumstance precluding the application of collateral estoppel since both the trial court and the appellate court had previously determined that all of parcel four was necessary to establish contiguity with Powers' property. Specifically, the Village asserted that (1) the property described in the first amended petition was the same property as parcel four less the east 42 feet and right-of-way; (2) Inland's revised legal description was the legal equivalent of a cosmetic "nip and tuck" procedure; (3) Inland previously argued that all of parcel four, including the east 42 feet and right-of-way, should be excluded from the petition for annexation; (3) Inland alternatively argued that "a sliver of Inland parcel four" could be included in the annexation to establish the necessary contiguity; (4) the trial court and appellate court ruled that all of parcel four was necessary to establish contiguity; and (5) Inland was collaterally estopped from relitigating the issue of whether parcel four was necessary for contiguity with Powers' property. Attached to the Village's motion to dismiss was an affidavit of the Village clerk stating that (1) the Village's boundaries with respect to the area in question had not changed since the previous litigation and (2) no parcels had been annexed to parcel two, parcel four, or Powers' property.

In its memorandum in opposition to the Village's section 2—619 motion to dismiss, Inland argued that collateral estoppel did not apply because (1) the Village failed to show that the property to be disconnected was identical to parcel four; (2) the "isolation" requirement in the disconnection statute differs from the "contiguity" requirement in the annexation statute; (3) changed circumstances precluded the application of collateral estoppel; and (4) applying the doctrine would produce inequitable results. With respect to "changed circumstances," Inland asserted that (1) eight years had passed since the filing of the annexation petition; (2) the Village had failed to expand its municipal services since the property was annexed; and (3) a subsequent boundary agreement between the Village and the City of Woodstock prevented Inland from locating all of the property it seeks to develop in a single municipality.

On October 9, 2003, the trial court issued a written order granting the Village's motion to dismiss Inland's first amended petition for

disconnection. According to the trial court, Inland's request was really an attempt to overrule the rulings made by the trial court and the appellate court in the prior proceedings. In finding that the doctrine of collateral estoppel barred Inland's attempt to disconnect parcel four, the court stated:

"In the prior litigation, the trial court and the appellate court found that the parcel which is the subject of this Petition to Disconnect was necessary for contiguity with the territory to be annexed by the Petitioners in that case.

In the present case, [Inland] *** is attempting to finesse the legal description of a portion of the property which has been involved in both cases so as to eliminate contiguity to the Powers Parcel. While this change in the legal description of a portion of the parcel creates an interesting scenario, this Court agrees with [the Village] in this case that [Inland] as an objector in the prior proceeding attempted to convince the trial court in the prior case to let them make similar adjustments to the legal description and that request was refused.

It is important to note that the boundary situation of the Village of Bull Valley at the location at issue in this matter is identical to the boundary situation at the time of the prior litigation in that there have been no subsequent annexations or disconnections that would change the circumstances of contiguity."

After the trial court dismissed with prejudice Inland's first amended petition for disconnection, Inland filed a timely notice of appeal.

## II. ANALYSIS

### A. Collateral Estoppel

As Inland notes, the issue we address on appeal is one of first impression. Specifically, we are asked to determine whether a decision regarding the contiguity of parcel four collaterally estops Inland from seeking to disconnect a portion of parcel four. More specifically, does a finding that parcel four is necessary to establish contiguity in an involuntary annexation proceeding bar a petition to disconnect a portion of that property under the disconnection statute? Inland contends that the trial court erred by applying collateral estoppel in this case, because the instant litigation presents different issues of fact and law from those adjudicated in the prior litigation. The Village counters that Inland is collaterally estopped from relitigating the issue of whether all or a part of parcel four is necessary for contiguity with Powers' property.

As stated, the trial court granted the Village's section 2—619 motion to dismiss based on the doctrine of collateral estoppel. A section 2—619 motion to dismiss admits all well-pleaded facts in the complaint

together with all reasonable inferences that can be drawn from those facts in the plaintiff's favor. *Redwood v. Lierman*, 331 Ill. App. 3d 1073, 1076-77 (2002). In deciding the merits of a section 2—619 motion, the trial court may not determine disputed factual issues without an evidentiary hearing. *Timberline, Inc. v. Towne*, 225 Ill. App. 3d 433, 439 (1992). Where a cause of action is dismissed under a section 2—619 motion, the question on appeal is whether a genuine issue of material fact exists and whether the defendant is entitled to a judgment as a matter of law. *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001). Our review of the granting of a section 2—619 motion to dismiss is *de novo. Nowak*, 197 Ill. 2d at 389.

■ A prior judgment may have preclusive effects in a subsequent action under the doctrines of *res judicata* and collateral estoppel. *Nowak*, 197 Ill. 2d at 389. *Res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and as to them, constitutes an absolute bar to a subsequent action involving the *same* claim, demand, or cause of action. *Nowak*, 197 Ill. 2d at 389. When *res judicata* serves as a bar against the prosecution of a second action between the same parties upon the same claim or demand, it is conclusive not only as to every matter that was offered to sustain or defeat the claim, but as to any other matter that might have been offered for that purpose. *Nowak*, 197 Ill. 2d at 389.

On the other hand, the doctrine of collateral estoppel applies when a party, or someone in privity with a party, participates in two separate and consecutive cases arising on *different* causes of action, and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction. *Nowak*, 197 Ill. 2d at 389-90. Under collateral estoppel, the adjudication of the fact or question in the first cause will be conclusive of the same question in the later suit. *Nowak*, 197 Ill. 2d at 390. Collateral estoppel differs from *res judicata*, however, in that the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined, rather than matters that might have been litigated and determined. *Nowak*, 197 Ill. 2d at 390.

■ Collateral estoppel bars the trial of an issue that has been fairly and completely resolved in a previous proceeding. *Talarico v. Dunlap*, 281 Ill. App. 3d 662, 665 (1996). In order to establish collateral estoppel, a defendant must establish that (1) the issue decided in the prior action was identical to the one presented in the suit in question; (2) a court of competent jurisdiction rendered a final judgment on the merits in the prior action; (3) the party against whom the

doctrine is asserted was a party to the prior action or in privity with such a party; and (4) the factual issue against which the doctrine is interposed has actually and necessarily been litigated and determined in the prior action. *Talarico*, 281 Ill. App. 3d at 665. In addition, collateral estoppel is an equitable doctrine, so that, even where the threshold elements of the doctrine are satisfied, it will not be applied if an injustice would result. *Talarico*, 281 Ill. App. 3d at 665. Before collateral estoppel can be applied, however, we must first determine whether the party against whom the estoppel is asserted had a full and fair opportunity and an incentive to litigate the issue in the prior proceeding. *Talarico*, 281 Ill. App. 3d at 665. In determining whether collateral estoppel applies, it is necessary to balance the need to limit litigation against the right to a fair adversary proceeding in which a party may fully present its case. *Nowak*, 197 Ill. 2d at 391.

Initially, we note that the only requirement of collateral estoppel disputed by the parties is whether the issue adjudicated in the prior proceeding is identical to the issue presented here. According to Inland, the case at bar presents different issues of fact and law from those in the previous litigation. In particular, Inland contends that its petition for disconnection arises under a different statute with a different purpose from the statute governing objections to annexations. Inland also contends that the parcel in its amended petition to disconnect is not identical to the parcel at issue in the annexation case.

## B. Contiguity Requirement

■ In the previous litigation, Inland sought to have parcel four eliminated from the annexation petition by objecting under subsection (4) of section 7—1—3, which permits the exclusion of land so long as the exclusion does not destroy the contiguity of the remaining territory to be annexed with the annexing municipality. Under section 7—1—3, any interested person may file his objections:

"(1) that the territory described in the petition or ordinance, as the case may be, is not contiguous to the annexing municipality, (2) that the petition is not signed by the requisite number of electors or property owners of record, (3) that the description of the territory contained in the petition or ordinance, as the case may be, is inadequate, or (4) that the objector's land is located on the perimeter of such territory, that he does not desire annexation, and that exclusion of his land will not destroy the contiguity of such described property with the annexing municipality." 65 ILCS 5/7—1—3 (West 2002).

As Inland points out, the purpose of the contiguity requirement is to allow the natural and gradual extension of municipal boundaries to areas that adjoin one another in a reasonably substantial physical

sense. *In re Annexation of Certain Territory to the Village of Chatham, Illinois*, 245 Ill. App. 3d 786, 790-91 (1993). In that way, the delivery of services is more convenient for the municipality and more efficient for its citizens. *In re Annexation of Certain Territory to the Village of Chatham*, 245 Ill. App. 3d at 791. To be contiguous, tracts of land must touch or adjoin one another in a reasonably substantial physical sense. *In re Proposed Incorporation of the Village of Volo*, 229 Ill. App. 3d 321, 327 (1992). No fixed rule exists regarding how wide a common boundary must be to establish contiguity, and courts have held that the term "contiguity" should be given a uniform liberal construction. *In re Proposed Incorporation of the Village of Volo*, 229 Ill. App. 3d at 328. The determination as to the reasonableness of the contiguity must be determined from the facts of each case, and point-to-point touching or cornering is generally not sufficient to satisfy the requirement of contiguity. *In re Proposed Incorporation of the Village of Volo*, 229 Ill. App. 3d at 327-28.

Based on the above principles, the trial court in the previous case determined that parcel four was necessary to establish contiguity with Powers' property and the rest of the Village. In reaching this conclusion, the court rejected Inland's alternative argument that only three feet of the eastern perimeter of parcel four was necessary to establish contiguity with Powers' property. We subsequently affirmed the trial court's decision on appeal, holding that the inclusion of parcel four was necessary for contiguity with the territory sought to be annexed by the petitioners.

## C. Isolation Requirement

In its amended petition to disconnect, Inland seeks to disconnect a portion of parcel four. By carving out the east 42 feet and right-of-way, the property sought to be disconnected is 19.3 acres smaller than the parcel at issue in the previous litigation. According to Inland, disconnection of this property would not result in the "isolation" of any part of the municipality from the remainder of the municipality.

The disconnection statute states, in relevant part:

"The owner or owners of record of any area of land consisting of one or more tracts, lying within the corporate limits of any municipality may have such territory disconnected which (1) contains 20 or more acres; (2) is located on the border of the municipality; (3) if disconnected, will not result in the isolation of any part of the municipality from the remainder of the municipality[;] (4) if disconnected, the growth prospects and plan and zoning ordinances, if any, of such municipality will not be unreasonably disrupted[;] (5) if disconnected, no substantial disruption will result to existing municipal service facilities, such as, but not limited to,

sewer systems, street lighting, water mains, garbage collection and fire protection[;] (6) if disconnected the municipality will not be unduly harmed through loss of tax revenue in the future." 65 ILCS 5/7—3—6 (West 2002).

The purpose of the disconnection statute is to allow owners of property that is not being used for municipal purposes to disconnect that property in order to avoid the burdens of municipal taxation and regulation. *Citizens for Conservation v. Village of Lake Barrington*, 241 Ill. App. 3d 471, 475 (1993). The courts have liberally construed disconnection statutes in favor of disconnection so long as the enumerated requirements are met, regardless of the purpose of the petitioner. *Indian Valley Golf Club, Inc. v. Village of Long Grove*, 135 Ill. App. 3d 543, 547 (1985) (*Indian Valley I*). The common theme is to permit disconnection absent a hardship or impairment to the municipality. *Indian Valley I*, 135 Ill. App. 3d at 547. The disconnection statute should be given a sensible, intelligent, and reasonable meaning. *Indian Valley I*, 135 Ill. App. 3d at 547.

Disconnection cannot occur if it results in the isolation of one part of a municipality from the rest of the municipality. *Indian Valley I*, 135 Ill. App. 3d at 548. The word "isolation" refers to physical isolation rather than economic, functional, or some other aspect of isolation not contemplated by the statute. *Indian Valley I*, 135 Ill. App. 3d at 548. With respect to isolation, the determining factor is contiguity. *Indian Valley I*, 135 Ill. App. 3d at 548. In other words, if property is isolated from a municipality, it is not contiguous to it; if contiguous, it is then not isolated. *Indian Valley I*, 135 Ill. App. 3d at 548.

Both parties agree that, under the disconnection statute, Inland must show that the disconnection of the revised parcel four would not "isolate" any part of the municipality from the rest of the municipality. However, the issue the parties do not agree on is what constitutes "isolation." According to Inland, a finding of isolation in a disconnection procedure requires a different analysis from a finding of contiguity in the annexation context. Inland asserts that "isolation" and "contiguity" are not synonymous, and that the disconnection statute contains no mention or requirement of "contiguity." The Village, on the other hand, contends that the isolation requirement in the disconnection statute is tantamount to a finding of contiguity. According to the Village, in order to satisfy the isolation requirement under the disconnection statute, Inland must show that disconnection of the property would not "destroy the contiguity" with Powers' property and the rest of the Village. The Village argues that, because both the trial court and the appellate court determined that all of parcel four was necessary to establish contiguity, Inland is collaterally estopped from seeking to disconnect any of parcel four.

■ Contrary to Inland's assertion, the case law is clear that the "isolation" requirement in the disconnection statute is analyzed in terms of "contiguity." In order to determine whether any part of a municipality is "isolated," courts look to the contiguity of the remaining property. For example, in *LaSalle National Bank v. Village of Burr Ridge*, 81 Ill. App. 2d 209 (1967), Burr Ridge argued that the disconnection of 126.5 acres of land would result in the isolation of two "fingers" or corridors from the remainder of the municipality. *LaSalle National Bank*, 81 Ill. App. 2d at 216. We stated that, although cornering was not sufficient to establish contiguity, the two fingers would be contiguous to Burr Ridge if there was touching in a reasonably physical sense. *LaSalle National Bank*, 81 Ill. App. 2d at 216. So long as there remained a continuing and connected boundary line, with no cornering, there was no isolation as contemplated by the statute. *LaSalle National Bank*, 81 Ill. App. 2d at 216. In *LaSalle National Bank*, we reiterated our view that the word "isolation" refers only to physical isolation, rather than economic or functional isolation. *LaSalle National Bank*, 81 Ill. App. 2d at 216-17; see also *LaSalle National Trust, N.A. v. Village of Mettawa*, 249 Ill. App. 3d 550, 565 (1993) (although contiguity, *per se*, is not an element in the current disconnection statute, when contiguity is at issue in a petition for disconnection, contiguity has the same meaning under the disconnection statute as under the annexation statute).

Similarly, in *Indian Valley Golf Club, Inc. v. Village of Long Grove*, 173 Ill. App. 3d 909 (1988) (*Indian Valley II*), we analyzed Long Grove's isolation argument in terms of contiguity. In *Indian Valley II*, we disagreed with the trial court's finding that the disconnection of certain property would result in the isolation of a part of Long Grove, lot 78. *Indian Valley II*, 173 Ill. App. 3d at 912. In making this decision, we rejected Long Grove's argument that lot 78 was isolated from it because the lot was inaccessible by road and thus incapable of receiving certain services from the village. *Indian Valley II*, 173 Ill. App. 3d at 912. We stated that the fact that lot 78 was inaccessible to the village by road was inconsequential to a determination of whether the lot was isolated from the rest of Long Grove. " 'Rather, what we believe to be the determining factor, according to cases from this district and others, is contiguity. If property is isolated from a municipality, it is not contiguous to it; if contiguous, it is then not isolated.' " *Indian Valley II*, 173 Ill. App. 3d at 912, quoting *Indian Valley I*, 135 Ill. App. 3d at 548-49. Because a substantial physical touching existed between lot 78 and the rest of Long Grove, we concluded that "the contiguity was such that it satisfied the mandate of the [disconnection] statute that no part of a municipality should be isolated from the remainder." *Indian Valley II*, 173 Ill. App. 3d at 912.

More recently, in *JLR Investments, Inc. v. Village of Barrington Hills*, 355 Ill. App. 3d 661, 668 (2005), we stated that "[a] property is isolated from a municipality if it is not contiguous to it." There, the petitioners sought to disconnect approximately 368 acres of land from Barrington Hills. *JLR Investments*, 355 Ill. App. 3d at 663. The disconnection of the property created a "T"-shaped corridor that connected approximately 167 acres in the northwest corner of Barrington Hills to the remainder of Barrington Hills. *JLR Investments*, 355 Ill. App. 3d at 668. The 45-acre corridor, which was 515 feet wide and about 4,200 feet long, was connected to Barrington Hills by segments that were 512.22 feet wide on one end and 302.70 feet wide on the other. *JLR Investments*, 355 Ill. App. at 669. Although Barrington Hills argued that disconnection would isolate the property in the northwest corner, we noted that courts had found smaller boundaries to be contiguous and not isolated. *JLR Investments*, 355 Ill. App. 3d at 669. Thus, we concluded that disconnection of the petitioners' property would not isolate any portion of Barrington Hills. *JLR Investments*, 355 Ill. App. 3d at 669.

Inland relies on *Frank v. Village of Barrington Hills*, 106 Ill. App. 3d 747 (1982), for the proposition that a finding of "not isolated" is different from a finding of "contiguous." *Frank*, however, is inapposite to the case at bar. In *Frank*, we analyzed the prior version of the disconnection statute, which contained a requirement not present in the current statute. At the time *Frank* was decided, land sought to be disconnected could not be contiguous in whole or in part to any other municipality. *Frank*, 106 Ill. App. 3d at 755. Although the Village of Barrington Hills argued that disconnection was impermissible because the property was contiguous with the Village of Algonquin, we held that a common boundary one-half the width of a road did not make the property contiguous with the Village of Algonquin. *Frank*, 106 Ill. App. 3d at 755. In support of its argument, the Village of Barrington Hills pointed out that, in *LaSalle National Bank v. Village of Willowbrook*, 40 Ill. App. 2d 359 (1963), strips of land 50 feet wide and 33 feet wide were not found to be isolated from a village when another piece of land was disconnected. *Frank*, 106 Ill. App. 3d at 755-56. Under those facts, we stated in *Frank* that a determination that the narrow strips were not isolated was not necessarily a determination that a common boundary of those lengths would permit annexations or disconnections at those points. *Frank*, 106 Ill. App. 3d at 756. However, we also pointed out that there was case law where contiguity and nonisolation were likened to each other. *Frank*, 106 Ill. App. 3d at 756.

Significantly, three years after deciding *Frank*, we stated that the determinative factor with respect to isolation is contiguity. See *Indian Valley I*, 135 Ill. App. 3d at 548 (if property is isolated from a

municipality, it is not contiguous to it; if contiguous, it is then not isolated). Most recently, in *JLR Investments*, we reiterated the view that "[a] property is isolated from a municipality if it is not contiguous to it." *JLR Investments*, 355 Ill. App. 3d at 668. This approach makes sense when looking at the natural meanings of "isolation" and "contiguity." To "isolate" means to set apart from others. Merriam-Webster's Collegiate Dictionary 621 (10th ed. 1994); see *Indian Valley I*, 135 Ill. App. 3d at 548 (we must take the word "isolation" in its ordinary usual meaning and give it a sensible meaning consonant with the context in which it is used). Conversely, contiguity requires that tracts of land touch or adjoin one another in a reasonably substantial physical sense. *In re Proposed Incorporation of the Village of Volo*, 229 Ill. App. 3d at 327. Given the natural meaning of these words in common and accepted usage, and the rule that courts should consider the entire statutory scheme *in pari materia* in a fashion that renders the statute consistent, useful, and logical (*Costello v. Governing Board of Lee County Special Education Ass'n*, 252 Ill. App. 3d 547, 557 (1993)), we find nothing improper in examining isolation in terms of contiguity.

That said, Inland next argues that two changed circumstances preclude the application of collateral estoppel in this case. Inland points out that when new facts or conditions intervene before a second action, they establish a new basis for the claims and defenses of the parties, and the former judgment cannot be pleaded as a bar in a subsequent action. See *Northern Illinois Medical Center v. Home State Bank of Crystal Lake*, 136 Ill. App. 3d 129, 144 (1985).

First, Inland argues that a boundary agreement between the Village and the City of Woodstock constitutes a material change in circumstances. The boundary agreement took effect in October 1997, after the hearing on the annexation petition but before appellate review of that decision. Thus, it was not considered by this court on appeal. Under the agreement, the Village and the City of Woodstock agreed, among other things, not to annex land in each other's territory. The boundary agreement also set up a dividing line that splits Inland's property between the two municipalities. According to Inland, if the agreement had existed during the underlying litigation, Inland could have sought to have all of its property in one or the other of the two municipalities. Inland argues that the impact of this "changed circumstance" is harsh because its property is now caught between "incompatible zoning and land-use plans" that make suitable use of the property impossible. The Village counters that the boundary agreement is irrelevant because it does not address whether parcel four, or a portion of parcel four, is necessary for contiguity with Powers' property. The Village attached to its motion to dismiss the affidavit of

the Village clerk, stating that the Village's boundaries with respect to the area in question had not changed and that no parcels had been annexed to parcel two, parcel four, or Powers' property.

Second, Inland argues that the Village's failure to expand municipal services constitutes a changed circumstance precluding the application of collateral estoppel. Attached to its memorandum in opposition to the Village's motion to dismiss is an affidavit of Inland's president, Anthony A. Casaccio. Casaccio's affidavit alleges that (1) although the Village argued that it needed all of the property in the proposed annexation in order to justify the expansion of its services, no services have been expanded; (2) the Village still fails to provide water or sewer services; (3) the Village does not have a fire department, a library, or a building, planning, or zoning department; (4) the Village does not provide health or human services; and (5) any police protection provided is limited. The Village attempts to discredit these claims by arguing that the trial court could have found Casaccio's affidavit to be "dubious, implausible or incredible."

■ We determine that Inland's claims regarding the boundary agreement and the failure to expand municipal services create disputed issues of fact that preclude the granting of the Village's section 2—619 motion to dismiss. As previously stated, in deciding the merits of a section 2—619 motion, the trial court must assume that the well-pleaded facts of a plaintiff's complaint are true. *Timberline*, 225 Ill. App. 3d at 439. More importantly, the court must not determine disputed factual issues without an evidentiary hearing. *Timberline*, 225 Ill. App. 3d at 439; see also *A.F.P. Enterprises, Inc. v. Crescent Pork, Inc.*, 243 Ill. App. 3d 905, 913 (1993) (in deciding the merits of a section 2—619 motion, a trial court cannot determine disputed factual issues solely upon affidavits and counteraffidavits; if affidavits present disputed facts, the parties must be afforded the opportunity to have an evidentiary hearing). Here, Inland alleged that eight years have passed since the original annexation petition was filed, that a subsequent boundary agreement prevents it from making suitable use of its property, and that the Village has failed to expand its municipal services. Inland attached to its memorandum the boundary agreement and Casaccio's affidavit regarding the lack of municipal services. In light of these disputed factual issues, it was improper for the trial court to resolve such questions without conducting an evidentiary hearing.

In sum, we agree with the trial court that, absent any changed circumstances, collateral estoppel would bar Inland's petition for disconnection. However, collateral estoppel is an equitable doctrine. Even where the threshold elements of collateral estoppel are satisfied,

collateral estoppel must not be applied to preclude a party from presenting its claim unless it is clear that no unfairness would result to the party being estopped. *Nowak*, 197 Ill. 2d at 391. If an injustice would result, collateral estoppel will not be applied. *Talarico*, 281 Ill. App. 3d at 667. Before applying collateral estoppel, the court must determine whether the party had a full and fair opportunity and an incentive to litigate the issue in the prior proceeding. *Talarico*, 281 Ill. App. 3d at 667. Courts must balance the need to limit litigation against the right to a fair adversarial proceeding in which a party may fully present its case. *Nowak*, 197 Ill. 2d at 391.

Inland argues that it would be unfair to apply collateral estoppel in this case. Inland points out that the disconnection statute's purpose is to allow owners of property that is not being used for municipal purposes to disconnect that property in order to avoid the burdens of municipal taxation and regulation. *Citizens for Conservation*, 241 Ill. App. 3d at 475. According to Inland, years have passed, municipal services remain in virtually the same state as they were in 1995, and its property continues to be held hostage to extreme zoning restrictions that foreclose feasible use of the property. Because Inland has alleged changed circumstances that create disputed issues of fact, we decline to find that Inland is collaterally estopped from filing a petition to disconnect a smaller portion of parcel four. In our mind, such a result would contravene the purpose of the disconnection statute and ignore the fairness considerations inherent in the doctrine of collateral estoppel.

## III. CONCLUSION

In deciding the merits of the Village's section 2—619 motion, the trial court erred by determining disputed factual issues without an evidentiary hearing. Accordingly, we remand the cause for an evidentiary hearing based on Inland's claim of two changed circumstances. On remand, the trial court is instructed to determine (1) whether changed circumstances, in fact, exist; and (2) if so, whether they constitute an exception that would preclude the application of collateral estoppel in this case.

For the foregoing reasons, we reverse the judgment of the circuit court of McHenry County and remand the cause for an evidentiary hearing.

Reversed and remanded.

BYRNE and CALLUM, JJ., concur.