THE VILLAGE OF FOX RIVER VALLEY GARDENS *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. THE LAKE COUNTY FOREST PRESERVE DISTRICT, Defendant-Appellant and Cross-Appellee (The Lake County Forest Preserve District, Plaintiff-Appellant and Cross-Appellee; American National Bank & Trust Company of Chicago, as Trustee, *et al.*, Defendants-Appellees and Cross-Appellants).

Second District   No. 2—91—0393

Opinion filed January 31, 1992.

Margaret M. Borcia, of Donald T. Morrison & Associates, P.C., of Waukegan (Joseph T. Morrison, of counsel), for appellant.

Erin M. O'Connor, of Richards, Ralph, Eiden, Eckert & O'Donnell, Chartered, of Vernon Hills (Robert T. O'Donnell, of counsel), for appellees.

JUSTICE BOWMAN delivered the opinion of the court:

This case involves an appeal and cross-appeal from an order disposing of two separate actions which were consolidated in the circuit court of Lake County. The order dismissed an eminent domain action brought by the Lake County Forest Preserve District (District) and entered judgment in favor of the Village of Fox River Valley Gardens (Village) and The Moorings on Fox River Limited Partnership (Partnership) in their action for declaratory judgment.

The District appeals from the disposition of both actions, while the Village and Partnership cross-appeal from a number of adverse findings made by the trial court in reaching its decision.

The District seeks to condemn 225 acres of open land located entirely within the Village. Owned prior to August 1989 by the Cashmore family, the parcel (Cashmore property) lies along the north bank of the Fox River and consists in large part of wetlands and flood plain. Directly across the river, on the south bank, is Lyons Prairie, a 440-acre parcel of land owned by the McHenry County Conservation District. (See figure No. 1.) The southernmost boundary of the Cashmore property meets the northern boundary of Lyons Prairie at the center line of the Fox River.

The Village's population, as reflected in the 1990 census, consisted of 665 persons. While it is not altogether clear which evidence was admitted by the trial court on the point, there is indication in the record that the residents relied solely on septic systems for sewage disposal since the Village did not have a municipal sanitary sewer system. There is also intimation in the record that problems had developed with at least some of those systems.

In January 1989 the Partnership entered into a contract for the purchase of the Cashmore property. Between January and June 1989 the Partnership conducted various activities necessary for the development of the parcel, such as environmental studies, surveys, and utilities investigations. The District began exploring the possibility of acquiring the Cashmore property in June 1989 by initiating an environmental assessment of the land.

On August 16, 1989, the Village annexed the Cashmore property pursuant to an annexation agreement between the Village and the Partnership. Under the terms of this agreement, the Village was bound to withhold its concurrence or consent to any condemnation proceedings affecting the property brought by any private association or governmental entity, including the District. The agreement also required the Partnership to install oversized sanitary sewer lines on the property, thus making sanitary sewer service available to the entire Village. Shortly following annexation the Partnership purchased the property for $4,700,000.

The following October, the District resolved to acquire the Cashmore property and ordered an appraisal of the parcel. In May 1990 the District informed the Village of its interest in the recently annexed Cashmore property. Later the same month the Village accepted, by oral resolution, a donation from the Partnership of a 20-foot-wide strip of land adjacent to and running along the entire

southernmost boundary of the Cashmore property. Since that boundary is located at the center line of the Fox River, the 20-foot-wide strip begins in the middle of, and lies entirely within, the bed of the river. The conveyance was subject to a number of conditions, including agreement by the Village to reconvey the property to the Partnership upon request.

On June 18, 1990, after receiving and approving an appraisal of the property, the District offered to purchase the Cashmore parcel from the Partnership at the full amount of the appraisal. On June 20 the attorney for the District appeared at a Village Board meeting seeking the Village's consent to the District's purchase or condemnation of the Cashmore property. The requested consent was not given, and the following day the Partnership deeded the 20-foot strip to the Village.

On July 30, following the District's adoption of a resolution authorizing both a final offer to the Partnership and, if necessary, an action in eminent domain, the Village and Partnership filed a complaint for declaratory judgment and injunctive relief. The complaint sought a judicial determination that the District did not have the statutory authority to acquire the Cashmore property. The District filed its complaint in eminent domain four days later. Both complaints cited to section 6 of "An Act to provide for the creation and management of forest preserve districts in counties having a population of less than 3,000,000" (Ill. Rev. Stat. 1989, ch. 96½, par. 6301 *et seq.*), now known as the Downstate Forest Preserve District Act (see Ill. Rev. Stat., 1990 Supp., ch. 96½, par. 6300) (hereinafter Act), for the parties' respective positions as to the District's authority to condemn the Cashmore property. Section 6 of the Act states, in pertinent part:

> "Any such District shall have power to acquire lands and grounds for the aforesaid purposes by *** purchase or condemnation ***. No district with a population less than 600,000 shall have the power to purchase, condemn, lease or acquire an easement in property within a municipality without the concurrence of the governing body of the municipality, except where such district is acquiring land for a linear park or trail not to exceed 100 yards in width or is acquiring land contiguous to an existing park or forest preserve ***." (Ill. Rev. Stat. 1989, ch. 96½, par. 6309.)

The parties do not dispute that the District has a population less than 600,000.

The District subsequently filed a motion to dismiss the declaratory judgment complaint, and the Village and Partnership (hereinafter collectively, Owners) filed a traverse and motion to dismiss the eminent domain action. In their motion the Owners alleged that the District did not have the authority to condemn the Cashmore property because (1) part of the property was owned by the Village, and the District could not condemn public property; and (2) the Village had not consented to the District's condemnation, and the property sought did not fall within any of the statutory exceptions to the consent requirement. The District's motion to dismiss was denied, and the hearing on the Owners' traverse and motion to dismiss the eminent domain action was consolidated with the trial of the declaratory judgment action. At trial the District sought to show that the Cashmore property fell within the statutory exception for land contiguous to an existing park or forest preserve. The District argued that the property was contiguous to Lyons Prairie and that Lyons Prairie qualified as an existing park or forest preserve.

Following the trial the court entered an order which included numerous findings of fact and law. The court's final conclusion, briefly summarized, was that, although the Cashmore property and Lyons Prairie were contiguous as a matter of law, Lyons Prairie was not a park or forest preserve as required by the statute. As a consequence, in the absence of municipal consent, the District did not have the statutory power to acquire the Cashmore property through condemnation. Accordingly, the court entered judgment in favor of the Owners in the declaratory judgment action and dismissed the complaint in the eminent domain action. This timely appeal and cross-appeal followed.

■ As a preliminary matter, we address two motions, and the objections thereto, which we ordered to be taken with the case. The District first moved to strike the statement of facts contained in the Owners' brief. The District asserts that the statement of facts contains numerous recitals which are either not supported by, or inconsistent with, the record. We have extensively reviewed the record of this case and considered each point raised by the District, along with the Owners' corresponding response. It is true the Owners included argumentative, conclusory and, occasionally, emotionally charged remarks in their statement of facts. However, we find the statement otherwise adequately supported by the record. Certainly, nothing in the statement is so misleading as to have interfered with or precluded our review. Under these circumstances the statement of facts need not be stricken. (See *Koplin v. Hinsdale*

*Hospital* (1990), 207 Ill. App. 3d 219, 223-24.) We note, though, that we do find questionable a number of the Owners' objections which claim the District admitted to the particular statement challenged by the motion to strike. The alleged admissions appear tenuous, at best. We remark also that the Owners rely in part on, as they put it, "reasonable and fair inferences drawn from the record on appeal." We stress, as we did in *Koplin* (207 Ill. App. 3d at 224), that reasonable inferences, even though drawn from the record as a whole, are not facts and are inappropriate in a statement of facts. Nevertheless, the District's motion to strike the Owners' statement of facts is denied.

■■ The District's second motion is to strike the Owners' argument that the Village acquired the 20-foot strip of land for the proper public purpose of providing sanitary sewer service to Village residents. The District insists that there was no evidence or testimony in the record to support this argument. The Owners respond by quoting remarks made by the court at trial which purportedly show evidence was admitted on the issue. We have carefully considered the cited remarks and have no doubt that the lower court admitted and considered evidence that the Village believed or had made a determination that it needed a sanitary sewer system and was attempting to secure such a system in conjunction with development of the Cashmore property. The court specifically referred to the annexation agreement between the partnership and the Village as evidence of this Village determination. While it also appears that the court found other evidence, *i.e.*, evidence relating to the *actual* need for sanitary sewers, to be irrelevant, the evidence that was admitted supports the Owners' argument, albeit in a somewhat roundabout way, that the 20-foot strips were conveyed for a proper public purpose. Thus, that argument need not be stricken.

We turn now to the substantive issues raised on appeal. The District first contends the trial court erred in finding that Lyons Prairie is not a "park or forest preserve" as that phrase is used in the statute. The court construed the statute to mean that land within a municipality sought to be acquired without the municipality's consent must be contiguous to existing park district or forest preserve district property.

Initially, the District argues that the term "park" in the statute is clear and unambiguous and the trial court, therefore, was not required to interpret the word in the first place. Alternatively, according to the District's argument, the lower court gave the statute an erroneous interpretation when it determined that "park" referred

to existing park *district* property. The Owners counter that the trial court reached the right conclusion but posit that the better interpretation is that "an existing park or forest preserve" refers only to parks or forest preserves already owned by the acquiring forest preserve district.

■ As often stated, the fundamental rule of statutory construction is to give effect to the intent of the legislature. (*State v. Mikusch* (1990), 138 Ill. 2d 242, 247.) In order to do so, a court looks first to the language of the statute, and, if the language is clear and unambiguous, the court should give it effect and not employ extrinsic aids to construction. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277.) We think the broad terminology in the Act, standing alone, does not convey in plain and certain fashion what the legislature meant by "park or forest preserve." In particular, it is readily apparent that "park" is a general name for sites ranging all the way from national parks to local tot playgrounds. Where, as here, a statute is susceptible to more than one interpretation, it is appropriate to look beyond its language and examine other sources for evidence of legislative intent. (*Logston*, 103 Ill. 2d at 279; *Mister v. A.R.K. Partnership* (1990), 197 Ill. App. 3d 105, 119 (Reinhard, J., specially concurring).) When attempting to discover legislative intent, a court should consider statutes in their entirety, noting the subject addressed and the apparent objective of the legislature in enacting them. (*Mikusch*, 138 Ill. 2d at 247.) Application of these principles persuades us that, although section 6 of the Act places limits on a forest preserve district's power to acquire property located within a municipality, the legislature did not intend so severe a restriction as either determined by the trial court or suggested by the Owners.

We note initially that the trial court referred, without explanation or clarification, to "park district or forest preserve district" property. We assume, as the parties appear to do also, that the references are to park districts as provided for in the Park District Code (Ill. Rev. Stat. 1989, ch. 105, par. 1–1 *et seq.*) and forest preserve districts as provided for in the Act and related statutes. Such districts are specific and unique statutory entities. It would have been a simple matter for the legislature to indicate that acquisitions had to be contiguous to parcels owned by such entities. The legislature did not do so. Furthermore, park district and forest preserve district lands are far more limited than parks and forest preserves in general. So obvious an omission by the legislature of the limiting

language imported by the trial court is not likely to have been a matter of oversight.

The limitation found by the trial court makes little sense in light of the many entities other than park districts and forest preserve districts which may hold land similar to that held by park districts and forest preserve districts. For example, it is common knowledge that national forests, national parks and State parks, and various conservation districts all maintain a variety of park lands and forests. Parks and/or forests may also be owned by counties (Ill. Rev. Stat. 1989, ch. 34, pars. 5—1005, 5—1049), townships (Ill. Rev. Stat. 1989, ch. 105, par. 319), and cities and villages (Ill. Rev. Stat. 1989, ch. 24, pars. 11—98—1, 11—99—1, 11—100—1).

The legislature cannot have meant to allow a forest preserve district to acquire land adjacent to a park belonging to a park district, without municipal consent, and, at the same time, prohibit a forest preserve district from acquiring land adjacent to a very similar park, unless it secures municipal consent, merely because the park belongs to the township or the county. The same holds true for forest lands held by a forest preserve district as opposed to forests held by a county or the State or national park system. It is presumed the legislature did not intend its legislation to result in absurd or unreasonable consequences. (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 363; *Tersavich v. First National Bank & Trust Co.* (1990), 194 Ill. App. 3d 972, 977-78.) We will not expand and twist the meaning of the words used by the legislature to support an unreasonable result. See *Droste v. Kerner* (1966), 34 Ill. 2d 495, 504.

■ Much of what we have just said is equally applicable to the Owners' contention that the existing park or forest preserve called for by the statute must be owned by the forest preserve district seeking to acquire new property. Had the legislature intended such a limitation, it could easily have worded the statute accordingly. We think it apparent that the requirement for municipal consent reflects a legislative attempt to balance the rights of forest preserve districts to acquire land for forest preserve purposes against the rights of municipalities to determine the uses of land within the municipality. Although we have not found any relevant legislative debate, this balancing process, by its very nature, almost certainly engendered thoughtful and thorough reflection on the proper scope of the exceptions to the municipal consent requirement before the excepting language was adopted. Thus, it is likely the legislature considered and rejected the limitation urged by the Owners.

Too, the very fact the legislature used a balancing approach is persuasive that it did not intend to restrict unduly forest preserve district acquisitions. The requirement of municipal consent prevents the wholesale conversion into forest preserve uses of lands which might otherwise be put to residential, commercial, or any other use designated by the municipality. At the same time, the Act clearly contemplates the acquisition of land within the municipalities encompassed by a forest preserve district and thereby allows the orderly growth and development of forest preserve districts. If the only exception to municipal consent was for expansion of existing forest preserves and such expansion was not feasible in a given forest preserve district, that district—*e.g.*, a district consisting entirely of nonconsenting municipalities—could be totally frustrated in the pursuit of its legislatively created goals. In our view, the legislature avoided this roadblock by providing at least one mechanism for acquiring forest lands, without municipal consent, in areas where a forest preserve district previously had no presence. We conclude that the legislature made careful word choices and did not intend to confine forest preserve district acquisitions to only those parcels adjacent to forest preserves already owned by the acquiring district.

■■ It remains to be determined whether Lyons Prairie falls within the scope of "an existing park or forest preserve" as the phrase appears in the statute. Notably, the legislature used the word "existing" in conjunction with "park or forest preserve." As we have indicated, we do not think this phraseology was meant to limit acquisitions to property adjacent to sites already owned by a forest preserve district. Rather, we believe it reasonable to conclude the legislators were referring to sites similar in character and/or use to the kind of land normally considered forest preserve and routinely held by forest preserve districts. After all, the statute is concerned exclusively with forest preserve districts, which are given the power to create forest preserves by acquiring land containing "natural forests or parts thereof." Ill. Rev. Stat. 1989, ch. 96½, par. 6308.

In addition, the meaning we give to the ambiguous phrase is consistent with the statutory objectives discussed above. It allows a forest preserve district to acquire property within a municipality, but only in a location where similar property is already present and dedicated to forest preserve or similar uses. In effect, the new acquisition would result only in the expansion of an existing use in an area the municipality would be less likely to have designated for

more intensive uses. Thus, the intrusion on the municipality would be minimized.

In sum, the "existing park or forest preserve" called for in the statutory exception must be similar in nature or, at the very least, similar in use to properties presently owned and utilized as forest preserves. Accordingly, we must determine whether Lyons Prairie is sufficiently similar to a forest preserve site, as such sites are envisioned by the statute, to find that it is an "existing park or forest preserve."

■ A forest preserve district may be formed when, among other things, an area of contiguous territory contains one or more "natural forests or parks [sic] thereof" (Ill. Rev. Stat. 1989, ch. 96½, par. 6302). As noted above, forest preserve districts have the power to create "forest preserves" by acquiring lands containing one or more "natural forests or parts thereof." (Ill. Rev. Stat. 1989, ch. 96½, par. 6308.) According to Webster's Third New International Dictionary 890 (1986), a "forest" consists of "a dense growth of trees and underbrush covering a large tract of land." We think this definition capsulizes the ordinary person's concept of a forest, i.e., an extensive, and at least in part, densely wooded tract of land, unimproved and, for the most part, in its natural state.

In order to create a forest preserve, a forest preserve district may acquire not only forests but also land connecting forests and "lands capable of being forested, or capable of being restored to a natural condition." (Ill. Rev. Stat. 1989, ch. 96½, par. 6308.) Such lands may be held "for the purpose of protecting and preserving the flora, fauna, and scenic beauties within such district, and to restore, restock, protect and preserve the natural forests and such lands together with their flora and fauna, as nearly as may be, in their natural state and condition, for the purpose of the education, pleasure, and recreation of the public." Ill. Rev. Stat. 1989, ch. 96½, par. 6308.

While Lyons Prairie is not a forest preserve, it is similar in both nature and use to such a preserve. The property is owned by the McHenry County Conservation District. The principal purpose of a conservation district is to:

> "[A]cquire ***, preserve and maintain wildland, other open land, scenic roadways and pathways; hold such real property, with or without public access, for the education, pleasure and recreation of the public or for other open space values; preserve portions thereof in their natural condition and undertake development of other portions thereof; manage and use

such real property in such manner and with such restrictions as will leave it unimpaired for the benefit of future generations; and otherwise promote the conservation of nature, flora and fauna, natural environment and natural resources of the district." (Ill. Rev. Stat. 1989, ch. 96½, par. 7103.) Further, "[e]very [conservation] district shall consider the preservation of natural conditions and protection of flora and fauna as part of its principal purpose and to that end shall set aside a substantial portion of its land to remain in an essentially undisturbed condition." Ill. Rev. Stat. 1989, ch. 96½, par. 7111.

Testimony given at trial provided evidence of the particular character and usage of Lyons Prairie. According to Steven Weller, the planning and development manager for the McHenry County Conservation District, Lyons Prairie consists of approximately 440 acres. About 299 of those acres have been dedicated as an Illinois Nature Preserve and consist of wet prairie and a marsh. Other portions of the property are forested. Lyons Prairie, including the portion which lies in the Fox River, has been used for canoe trips, hiking, and public education programs. The Conservation District had made various improvements to the property, including roads, parking, trails, and toilet facilities, to allow additional public use of the Lyons Prairie.

As can readily be seen from the respective statutes, while there are differences between forest preserve districts and conservation districts, the two kinds of districts also have common purposes: conservation and protection of natural and scenic resources; preservation of such resources in their natural state; and maintenance of resources for the education, pleasure and recreation of the public. (See *People ex rel. Vermilion County Conservation District v. Lenover* (1969), 43 Ill. 2d 209, 218.) Additionally, the evidence showed that Lyons Prairie is a large and at least partially forested site and is being used for the pleasure and education of the public. Thus, Lyons Prairie is similar to a forest preserve parcel, not only in purpose but also in nature and use. Collectively, these circumstances convince us that Lyons Prairie is precisely the type of site the legislature had in mind when it required a contiguous "existing park or forest preserve" in order for a forest preserve district to acquire land located within a municipality without that municipality's consent.

The Owners maintain that, even if Lyons Prairie is considered to be a park or forest preserve, the statutory exception to the municipal consent requirement does not apply because the Cashmore

property and Lyons Prairie are not contiguous, as required by the Act. Visually, the Cashmore property and Lyons Prairie lie directly across the Fox River from each other. (See Fig. No. 1.) However, the title to each property extends to the center of the river bed. Thus, the properties meet in the middle of the Fox River. The Owners insist that the river constitutes an intervening use which destroys any contiguity which might otherwise exist. The trial court expressly found that, as a matter of law, the two pieces of property were contiguous, and the contiguity was not affected by the river. To the contrary, the court found that the river was part of the uses of both properties. We agree.

The word "contiguity" has been found to mean " 'in actual contact; touching or adjoining.' " (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 352, quoting Webster's New Collegiate Dictionary, at 180 (2d ed.).) While we have found no definition of "contiguity" specific to the statute controlling forest preserve districts, in other contexts contiguity has been said to exist where tracts of land touch or adjoin each other in a reasonably substantial physical sense (*Western National Bank*, 19 Ill. 2d at 352; *In re Annexation to the Village of Downers Grove* (1981), 92 Ill. App. 3d 682, 685), or where the parcels have a substantial common boundary or a common border of reasonable length or width (*Frank v. Village of Barrington Hills* (1982), 106 Ill. App. 3d 747, 755; *Wescom, Inc. v. Woodridge Park District* (1977), 49 Ill. App. 3d 903, 907). We see no reason to believe the legislature contemplated a different meaning for "contiguity" when it used the term to help delineate what land could be acquired by a forest preserve district under the exception to the municipal consent requirement.

■ The Owners recognize the general principle set forth above regarding contiguity but insist the Fox River prevents Lyons Prairie and the Cashmore property from touching in a reasonably substantial physical sense. There is no merit to this argument. The two tracts of land do, in fact, meet at the center line of the river and touch each other in a totally physical sense. They share an extensive common boundary as reflected in Figure No. 1. That they happen to meet at the center of the river does not detract from their physical meeting. This merely means that part of the river is on Lyons Prairie property and part is on the Cashmore property, and, as the trial court noted, the river constitutes part of the uses of both properties. In our view Lyons Prairie and the Cashmore property are contiguous in the sense that they adjoin physically along a decidedly substantial common boundary.

The Owners urge us to look beyond what they call the "technical" meeting or touching of the two properties and ask us to find that they are not contiguous because they lack unity of purpose and facilities. Such unity was said to form "the very basis for the requirement of contiguity" in *People ex rel. Village of South Barrington v. Village of Hoffman Estates* (1964), 30 Ill. 2d 385, 387. The Owners point out that the rights of the parties owning the two properties are subject to the right of the public to use the river and claim that the Lake County Forest Preserve District and the McHenry County Conservation District would not use their respective properties in the same manner or for the same purposes. They insist that the river frustrates the unity of purpose and facilities which should exist between properties if they are to be considered contiguous.

■ The Owners' reliance on *Village of Hoffman Estates* is of no avail. The court there applied a "unity of purpose and facilities" test precisely because the territory to be annexed did not physically adjoin the village. However, the village was already providing significant municipal services to the annexed area, and a basis for contiguity, other than physical contact or a common boundary, was appropriate. In contrast, the Cashmore property is physically contiguous to Lyons Prairie, and the "unity of purpose and facilities" test urged by the Owners need not be invoked. We note too that, as we fully and effectively discussed in *In re Annexation to Village of Downers Grove* (92 Ill. App. 3d at 686), *Village of Hoffman Estates* has been narrowly interpreted by the appellate court. We perceive no reason to apply its principles here in order to find a lack of contiguity when physical contiguity is present. Moreover, as may be implied from our earlier discussion, we do not think the respective purposes and uses of forest preserves and conservation lands are nearly so dissimilar as the Owners would have us believe.

The Owners also attack the trial court's conclusion regarding contiguity by claiming that the 20-foot strip of land donated to the Village by the Partnership separated the Cashmore property and Lyons Prairie and, thereby, precluded contiguity of the two parcels. The trial court made a number of findings relevant to this issue and determined essentially that the conveyance had been a sham and could not be used to frustrate the District's right of eminent domain.

The Owners assert initially that the trial court erred in allowing a collateral attack on the conveyance. They insist the District did not have standing to mount such an attack. In addition, the Owners

vigorously contest the court's findings that (1) the sole purpose of the conveyance was to destroy contiguity between the Cashmore property and Lyons Prairie, and (2) that the agreement between the Village and the Partnership, which required the Village to reconvey the strip of land to the Partnership at their request, resulted in the Village acquiring only a bare deed of ownership but no actual rights to use the land.

■ With regard to the standing issue, the Owners cite *Mills v. Forest Preserve District* (1931), 345 Ill. 503, for the rule that, where a municipal corporation enjoys general authority to hold land, title to land acquired may not be questioned collaterally, on the ground that the municipal corporation lacked the power to acquire the land, by anyone other than the State. *Mills* is not supportive of the Owners' position. In *Mills* a dissatisfied seller sought to rescind the sale of his land to the defendant forest preserve district. Relief was denied to the seller because he had received everything he contracted for, and it was no concern of his whether the defendant had acted beyond its power. The *Mills* court would not allow the defendant to get out of the bargain he had voluntarily made by focusing on the forest preserve district's unauthorized conduct. (See *Egidi v. Town of Libertyville* (1991), 218 Ill. App. 3d 596, 604-05.) In contrast to *Mills*, in this case the District seeks only to exercise the power of eminent domain granted to it by statute. (See Ill. Rev. Stat. 1989, ch. 96½, par. 6309.) The District does not focus on the Village's title to the land in order to extricate itself from an unsatisfactory bargain. We find the facts of *Mills* inapplicable here where the District is merely exercising a statutory power.

The District's standing to challenge the conveyance of land to the Village is supported by the record. The 20-foot strip of land was donated to the Village by the Partnership after the District notified both the Village and the Partnership of its intent to acquire the Cashmore property. In fact, the District had offered to purchase the Cashmore property at the full amount of its appraisal prior to the conveyance. Since the District had given notice of its intent and was already attempting to negotiate the purchase of the property, as required by the eminent domain statute (see Ill. Rev. Stat. 1989, ch. 110, par. 7—102; *Department of Transportation v. Walker* (1980), 80 Ill. App. 3d 1039, 1040), we think the District's interest in the strip of land which was conveyed to the Village was sufficient to support its standing to challenge that conveyance.

■■■ Moving on to the court's finding regarding the purpose of the conveyance, the Owners insist that the land was conveyed to protect the Village's land use decision regarding the Cashmore property and to insure provision of sanitary sewer services to Village residents. While we acknowledge the importance of these worthwhile Village goals, the record before us leaves no doubt that the 20-foot strip was conveyed to the Village for the immediate and specific purpose of blocking any attempt by the District to condemn the Cashmore property. In a letter written by the attorney for the Owners, and admitted into evidence, it is stated:

"The intent of the conveyances is to create an area of discontiguity between the Cashmore property and existing or proposed publicly owned parks, forest preserves or conservation areas. The conveyance of the strip of the bed of the river creates an area of discontiguity between the Cashmore property and a tract owned by the McHenry County Conservation District * * *."

At trial, in his opening statement, the attorney for the Owners said:

"Now, judge, we're not here to tell you that the owners deeded the 20 foot strips to the village along the middle—through the middle of the Fox River, to make it a trail in the event the Fox River dried up. We're here to tell you that the purpose for that deeded 20 foot strip is to protect the municipal boundary from being invaded by the Forest Preserve in the event they somehow sought to achieve contiguity * * *."

Finally, the mayor of the Village testified to essentially the same reason for the Village's acceptance of the 20-foot strips. We conclude that the conveyance of the strips of land constituted a deliberate maneuver intended to bar the condemnation subsequently pursued by the District.

As correctly pointed out by the District, the Village, which is a non-home-rule municipality, may acquire and hold title to real property only for a legitimate corporate purpose. (Ill. Rev. Stat. 1989, ch. 24, par. 2—2—12; *O'Fallon Development Co. v. City of O'Fallon* (1976), 43 Ill. App. 3d 348, 352.) As a general rule, when land is acquired by a municipality, the land itself is put to use. Here, we can think of *no* way in which a 20-foot-wide strip of river bottom could serve a corporate purpose in the usual sense. It is true that it can simply act as a permanent divider between the Cashmore property and Lyons Prairie and, thus, frustrate the District's objectives. This goal, however, is repugnant to the clear intent of the Act to allow a

forest preserve district to acquire property when the statutory conditions are met. The statutory authorization for the Village to acquire and hold real estate for a proper corporate purpose may not be twisted into authority for creating an artificial barrier to the fulfillment of the purpose of another statute. We perceive the conveyance as a legal gimmick to do just that and, therefore, agree with the District that the 20-foot strip of land was not acquired by the Village for a valid public purpose.

Finally, the Owners attack the trial court's reliance on the condition of the conveyance by which the Village agreed to reconvey the strip to the Partnership upon request. The Owners posit that this covenant did not affect the validity of the deed. We note that the trial court first found that under the terms of the conveyance the Village had acquired only a deed of ownership. In a separate, subsequent finding the court went on to state that the conveyances "under these circumstances" and for the purpose of destroying contiguity "[are] a sham, fundamentally unfair and against public policy, and cannot be used to prevent the exercise of the District's right of eminent domain." When viewed in context, the limitation on the conveyance appears to have been one of a number of considerations examined by the court. The judge evidently lumped that consideration together with the other factors before him and concluded that the conveyance should not be recognized for purposes of determining whether the property the District wished to condemn was contiguous to an existing park or forest preserve as required by the Act. We find that the trial court made a correct decision.

It is not disputed that a forest preserve district may not acquire property located in a municipality absent municipal consent, except under specified circumstances. However, it is clear from the statute that, when those circumstances are present, the forest preserve district's power to acquire is to prevail over the desires of the municipality, and the acquisition may proceed without municipal consent. At the time the District notified the Partnership of its intent to acquire the Cashmore property, that property was located contiguous to Lyons Prairie which, as we have seen, was an existing park or forest preserve. Thus, the Cashmore property fell within circumstances which excepted it from the requirement of municipal consent.

After the District gave notice of intent to acquire and initiated negotiations with the Partnership, the land was donated to the Village. The donation was made to destroy contiguity and, thus, take the District's proposed condemnation out of the statutory exception and subject it to the requirement of municipal consent—consent the Village

refused to give. Moreover, the deed used to accomplish the donation was subject to what we perceive to be, at the very least, a questionable requirement for reconveyance at the Partnership's request.

In our view the tactic employed by the Partnership and Village is directly opposed to the public policy embodied in the Act. Based on the circumstances existing when the District first attempted to acquire the land, that policy favored the District's right to condemn without Village consent. The Owners attempted to alter those circumstances. In this regard we note the provision in the Act that "no municipality shall annex any land for the purpose of defeating a District acquisition once the District has given notice of intent to acquire a specified parcel of land." (Ill. Rev. Stat. 1989, ch. 96½, par. 6309.) Similarly, we do not think a municipality should be permitted to take action which renders a property noncontiguous to other property for the purpose of defeating a forest preserve district acquisition once the district has given notice of intent to acquire a specific parcel. The action taken by the Owners here, while not in violation of the letter of the law, certainly is not in keeping with the spirit of the law.

In summary, the acquisition of the 20-foot strip by the Village was not made for an appropriate public purpose, was questionable as to its terms, and was distinctly contrary to public policy as set forth in the Act. We agree with the trial court that the conveyance was a sham which cannot be used to prevent the exercise of the District's power of eminent domain and conclude that the deed conveying the land was invalid and void at the outset. Consequently, the 20-foot strip remains part of the Cashmore property, and the Cashmore property is contiguous to Lyons Prairie.

The trial court resolved, and the parties argue, other issues which arise from the assumption that the conveyance of the 20-foot strip was valid. Inasmuch as we have decided it was not valid, we need not address those further issues.

For all of the reasons set forth above, the order of the circuit court of Lake County granting judgment in favor of the Village and the Partnership in case No. 90—CH—534 and dismissing the District's complaint in case No. 90—ED—36 is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

DUNN and UNVERZAGT, JJ., concur.