**FIRST DIVISION**
November 9, 2009

No. 1-08-2315

| | | |
|---|---|---|
| AUSTIN BANK OF CHICAGO, as | ) | Appeal from the |
| Trustee under Trust No. 4261, | ) | Circuit Court of |
| | ) | Cook County. |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 01 CH 7882 |
| | ) | |
| THE VILLAGE OF BARRINGTON | ) | |
| HILLS, an Illinois Municipal | ) | |
| Corporation, | ) | The Honorable |
| | ) | Peter Flynn, |
| Respondent-Appellant. | ) | Judge Presiding. |

JUSTICE GARCIA delivered the opinion of the court.

The Village of Barrington Hills (the Village) appeals from an order granting the petition of Austin Bank of Chicago to disconnect a 145-acre parcel of land (the subject property) from the Village's jurisdiction pursuant to section 7-3-6 of the Illinois Municipal Code (the Code) (65 ILCS 5/7-3-6 (West 2006)). The Village contends the disconnection of the subject property leaves two adjacent "barrier parcels"[1] at the southeastern corner of the Village isolated from the remainder of the Village in violation of section 7-3-6. Because the record supports the circuit court's ruling that the Village retained jurisdiction over the barrier parcels as a legal gimmick to prevent disconnection of the subject property, we affirm Judge Peter Flynn's order granting Austin Bank's disconnection petition.

---

[1] We adopt this term used by the parties at trial.

BACKGROUND

Prior to 1997, the southeast boundary of the Village's jurisdiction was a 45-acre parcel of land directly east of Route 59 (1997 boundary parcel). The 1997 boundary parcel was part of a larger 600-acre tree nursery owned and operated by the Klehm family (Klehm property), which extended farther north and east. At the time, the remainder of the Klehm property was in unincorporated Cook County. Immediately west of the 1997 boundary parcel and Route 59 is the subject property.

In 1997, Mesirow-Stein, a real estate development firm, purchased the entire Klehm property, including the 1997 boundary parcel. Mesirow-Stein sought to develop all of the Klehm property for high-density residential housing, a type of housing not permitted under the Village's zoning laws. To avoid the Village's restrictive zoning laws, Mesirow-Stein sought and obtained a disconnection of the 1997 boundary parcel from the Village's jurisdiction.

Had the entire 1997 boundary parcel been disconnected from the Village, the subject property would have become the easternmost point remaining under the Village's jurisdiction. However, two parcels within the 1997 boundary parcel were not disconnected. Under a Village ordinance granting the disconnection of the 1997 boundary parcel, two "barrier parcels," each 301 feet in width and less than 2 acres in area, directly

2

east of Route 59 and the subject property, remained within the Village's jurisdiction. These two parcels became the easternmost points of the Village's border.

The central issue in the litigation below was the significance of the barrier parcels remaining within the Village's jurisdiction vis-a-vis the petition for disconnection filed by Austin Bank. The Village took the position that because the barrier parcels are the easternmost point still within its jurisdiction, adjacent to the subject property across from Route 59, the disconnection of the subject property would leave those barrier parcels isolated from the remainder of the Village in violation of section 7-3-6 of the Code. Austin Bank asserted that the Village only retained the barrier parcels as a subterfuge to block disconnection of the subject property and, under existing case law, the circuit court, in giving a liberal reading to section 7-3-6, which favors disconnection, could find that disconnection is not defeated based on the isolation of the artificially created barrier parcels. We set out at length the evidence adduced at trial concerning the Village's decision to retain the barrier parcels.

Retention of the Barrier Parcels

On February 9, 1998, Mesirow-Stein representatives and Village officials met to discuss the possible disconnection of the 1997 boundary parcel. The next day, Michael Szkaltukski, a

developer with Mesirow-Stein, wrote a memo describing "issues brought to the table by [the Village]" at the meeting. The memo discussed the possibility of disconnecting most of the 1997 boundary parcel from the Village, while leaving a small area within the Village's jurisdiction. The memo noted, "The dimensions of the remaining parcel must be sufficient in size to prohibit the disconnection of [the subject property]." According to the memo, Village officials "suggested a minimum of 300 feet" in width. Village officials added "that the area which remains in [the Village] will be reviewed based on their requirement for storm detention and run off." Szkaltukski wrote that leaving an area under the jurisdiction of the Village would prevent disconnection of the subject property under section 7-3-6 of the Code because disconnection would make the barrier parcels "an island." Szkaltukski testified that there was no engineering reason to leave some of the 1997 boundary parcel in the Village's jurisdiction.

Anthony Iatarola, a beneficiary of the Austin Bank trust that holds title to the subject property, testified that in the summer of 1998 he attended a public meeting conducted by Mesirow-Stein to outline its development plans of the Klehm property, including the 1997 boundary parcel. At the meeting, Iatarola asked Mesirow-Stein's attorney, Ted Novak, whether the 1997 boundary parcel would be disconnected in its entirety. Novak

said that remnants of the parcel would remain under the Village's jurisdiction to act as "legal spite strips," a term commonly used to describe artificial strips of land created to frustrate a neighboring landowner's land use right. See, e.g., J.C. Penney Co. v. Andrews, 68 Ill. App. 3d 901, 904-05, 386 N.E.2d 923 (1979) (county code "prohibits 'spite' strips in 'new subdivisions' ").

Village officials expressed similar reasons for carving out the barrier parcels from the disconnection of the 1997 boundary parcel. Bruce Trego, an administrator from neighboring South Barrington, testified that Robert Kosin, the director of administration in the Village, told Trego in the summer of 1998 that the Village planned to maintain jurisdiction over the barrier parcels to prevent future disconnection of the subject property. James Kempe, the president of the Village when the barrier parcels were retained, testified that he decided to "go along" with the barrier parcel proposal because he would "rather lose 43 acres [of the 1997 boundary parcel] than lose the 145 [of the subject property] across the street."

In 2000, Mesirow-Stein formally presented a petition to the Village's zoning board of appeals to disconnect 42 acres of the 1997 boundary parcel, leaving only the barrier parcels under the Village's jurisdiction.

Jack Train, the chairman of the Village's zoning board of

appeals, conducted a public hearing on the petition on June 19, 2000. In the circuit court below, Train testified that prior to the hearing, Kosin informed him that the disconnection petition had been approved by the Village's attorneys to give the Village a legal ground to oppose any future effort to disconnect the subject property. The zoning board hearing focused primarily on the storm water management benefits the Village would retain by maintaining jurisdiction over the barrier parcels; protection of the Village's borders was not expressly raised at the hearing.

Mesirow-Stein did not file a disconnection petition in the circuit court. Instead, on June 26, 2000, the board of trustees passed an ordinance that disconnected from the Village the 1997 boundary parcel except for the two barrier parcels.

Some time after the zoning board hearing on the disconnection of the 1997 boundary parcel, Iatarola met with Train to express an interest in disconnecting the subject property. Train informed him that because the Village retained jurisdiction over the barrier parcels, the barrier parcels would legally prevent disconnection of the subject property.

Storm Water Management

In the circuit court, the Village sought to demonstrate the benefits of its retention of the barrier parcels as part of the storm water management for the Village. Robert Gudmundson, a Mesirow-Stein engineer, testified that the barrier parcels were

intended to function as storm water detention ponds controlling the flow of water toward the Village through two culverts that ran underneath Route 59, immediately east of the subject property. Gudmundson also testified that because the Village retained jurisdiction over the barrier parcels, Mesirow-Stein was required to submit storm water management plans in the course of its development of the 1997 boundary parcel within the Klehm property for the Village's approval.

To rebut Gudmundson's testimony, Austin Bank introduced testimony from engineering expert Christopher Burke. Burke testified that only 12 acres of the approximately 600 in Mesirow-Stein's development drained to either of the barrier parcels; the remainder drained through approximately seven other culverts that ran under Route 59. In Burke's opinion, the barrier parcels provided the Village with no benefit "from a storm water management perspective."

### The Petition for Disconnection

In May 2001, Austin Bank filed its petition in the circuit court to disconnect the subject property, alleging it satisfied all six disconnection factors set forth in section 7-3-6 of the Code. 65 ILCS 5/7-3-6 (West 2006). The Village filed a motion to dismiss based on Austin Bank's failure to allege a challenge to the disconnection ordinance. Judge Robert V. Boharic granted the motion, reasoning that because the disconnection of the 1997

7

boundary parcel occurred by way of an ordinance, Austin Bank was required to demonstrate that the ordinance itself was "arbitrary, capricious, or unreasonable," which it failed to do.

In May 2002, Austin Bank filed an amended two-count petition for disconnection. Count I alleged that the Village's decision to retain jurisdiction over the barrier parcels was "arbitrary, capricious, and a sham." Count II, as an alternative basis for relief, sought disconnection by leaving a 7.77-acre strip of the subject property connecting the barrier parcels and the Village under the Village's jurisdiction. The Village filed a motion to dismiss, which Judge Flynn, who had replaced the recently retired Judge Boharic, denied.

After discovery, the parties filed cross-motions for summary judgment. Judge Flynn granted the Village's motion as to count II, which argued that the proposed strip to remain within the Village was "too long and narrow to be 'contiguous.' " Austin Bank's motion sought partial summary judgment, contending that four of the six elements of section 7-3-6 of the Code were satisfied: (1) the subject property is more than 20 acres in area; (4) disconnection will not unreasonably disrupt the Village's plan and growth prospects; (5) disconnection will not substantially disrupt municipal services facilities such as sewers and lighting; and (6) the Village will not lose significant tax revenue from disconnection. See 65 ILCS 5/7-3-6

8

(West 2006) (numbering the factors for disconnection). Judge Flynn granted Austin Bank's motion, finding that no material question of fact existed as to factors (4) and (6) and that the parties were in agreement that factors (1) and (5) were satisfied. See 735 ILCS 5/2-1005(d) (West 2006).

Austin Bank amended count II to propose that the Village retain jurisdiction over a larger, 24.99-acre strip of the subject property adjacent to the barrier parcels. Judge Flynn denied the Village's motion to dismiss count II as amended. The case proceeded to trial on factors (2) and (3) for disconnection under counts I and II. See 65 ILCS 5/7-3-6 (West 2006).

Based on the evidence summarized above, Judge Flynn issued detailed findings on the record. Judge Flynn reaffirmed that the subject property satisfied factors (1), (4), (5), and (6) of section 7-3-6. He also found that factor (2) was satisfied as the subject property "is located on the border of the municipality." 65 ILCS 5/7-3-6 (West 2006). With regards to factor (3), that no "isolation of any part of the municipality" will result if disconnection is allowed, Judge Flynn found "that the [only] purpose of the barrier parcels was to block disconnection of the [subject property]." Judge Flynn found that "water management was at best an after-the-fact rationalization," and that the testimony suggesting that the barrier parcels gave the Village significant water management benefits "was just not

9

credible." Noting that cases addressing the factors under section 7-3-6 "have inveighed against mere subterfuge in attempting to *** frustrate disconnection," Judge Flynn held that "the barrier parcels were in fact a sham or subterfuge." As such, the isolation of the barrier parcels is "insufficient to defeat disconnection of the [subject property]." Judge Flynn granted Austin Bank's petition for disconnection on count I and, "in the alternative," on count II.

The Village timely appeals.

ANALYSIS

The Village first contends that "[b]ecause the Village's decision to maintain control over the Barrier Parcels was done pursuant to the Klehm Disconnection Ordinance, *** its decision is 'presumptively valid,' " citing <u>Village of Algonquin v. Village of Barrington Hills</u>, 254 Ill. App. 3d 324, 328, 626 N.E.2d 329 (1993). According to the Village, absent a finding that the ordinance is invalid, Judge Flynn erred as a matter of law in finding that the creation of the barrier parcels was a "sham and subterfuge." In other words, a presumptively valid disconnection ordinance forecloses a factual finding that goes behind the passage of the disconnection ordinance to find the true intention of the ordinance. The Village argues that only upon a finding that the ordinance creating the barrier parcels is invalid, which Judge Flynn did not enter, can Austin Bank's

10

petition be granted.  We disagree.

We find Village of Algonquin, as the principal authority for the Village's contention that Austin Bank was "required to prove 'by clear[,] affirmative [and admissible] evidence' that the Klehm Disconnection Ordinance 'constitutes arbitrary, capricious and unreasonable municipal action," inapposite to the issue before us.

Village of Algonquin involved a direct challenge to the "validity of a resolution adopted by defendant, the Village of Barrington Hills" closing a road at Barrington Hills' municipal border with neighboring Algonquin.  Village of Algonquin, 254 Ill. App. 3d at 326.  As part of its legal efforts to challenge the Barrington Hills ordinance, Algonquin claimed the ordinance "was void ab initio because it was adopted for an improper purpose."  Village of Algonquin, 254 Ill. App. 3d at 328. Algonquin acknowledged that Barrington Hills "has the right, pursuant to statute, to regulate the use of its streets. [Citation.]"  Village of Algonquin, 254 Ill. App. 3d at 328.  In the context of Barrington Hills' right to regulate the use of its streets, Algonquin also "recognize[d] the well-established rule that a municipal enactment, adopted pursuant to statutory authority, is presumptively valid."  Village of Algonquin, 254 Ill. App. 3d at 328.  Ultimately, the Second District ruled that the ordinance was not void as "adopted for purely private

purposes." Village of Algonquin, 254 Ill. App. 3d at 329. We find Village of Algonquin offers no guidance to the issue before us, whether the six factors for disconnection under section 7-3-6 were satisfied. See La Salle National Bank v. Village of Burr Ridge, 81 Ill. App. 2d 209, 225 N.E.2d 33 (1967) (under section 7-3-6, if the circuit court's finding that the requirements for disconnection have been met is not contrary to the manifest weight of the evidence, disconnection follows). Either the factors are satisfied or they are not.

Absent direct authority, we reject the Village's implied argument that because the barrier parcels came into existence by way of an ordinance that allowed the disconnection of the 1997 boundary parcel (see 65 ILCS 5/7-3-4 (West 2006)), Austin Bank's petition seeking disconnection by judicial procedure is subject to factors different than those set forth in section 7-3-6. We find no authority under the Municipal Code for the Village's implied claim that a disconnection petition in the context of this case should trigger a heightened scrutiny greater than that required under the express terms of section 7-3-6. The relief sought by Austin Bank does not require that it challenge the Village's Klehm disconnection ordinance. That the ordinance is considered to be presumptively valid has no impact on whether the petition of Austin Bank satisfied the six factors of section 7-3-6. Regardless of the outcome of Austin Bank's petition, the

12

1-08-2315

Village will retain jurisdiction over the barrier parcels, at least until it decides otherwise.  We reject the Village's effort to conflate these separate issues.

Standard of Review

Because this is a review of Judge Flynn's decision to grant a disconnection petition, the standard on review is whether Judge Flynn's finding that Austin Bank "established the statutory requirements for disconnection *** is clearly contrary to the manifest weight of the evidence."  JLR Investments, Inc. v. Village of Barrington Hills, 355 Ill. App. 3d 661, 668, 828 N.E.2d 1193 (2005), citing City of De Kalb v. Town of Cortland, 233 Ill. App. 3d 307, 310, 599 N.E.2d 153 (1992).

Factors for Disconnection

Under section 7-3-6 of the Code, the owner of record of any area of land within an Illinois municipality may file a petition in circuit court to disconnect that property from the municipality's jurisdiction.  65 ILCS 5/7-3-6 (West 2006).  To win disconnection, the petitioner must prove that the subject property satisfies six factors.  65 ILCS 5/7-3-6 (West 2006).  Although a petitioner has the burden to prove that his property meets each of the statutory factors, "the disconnection statute is to be liberally construed in favor of disconnection."  JLR, 355 Ill. App. 3d at 668, citing Harris Trust & Savings Bank v. Village of Barrington Hills, 133 Ill. 2d 146, 154-55, 549 N.E.2d

13

578 (1989). "The common theme is to allow disconnection absent a hardship or impairment to the municipality." JLR, 355 Ill. App. 3d at 668.

In its direct challenge to the judgment below, the Village contends that Judge Flynn's finding that the isolation factor does not defeat disconnection is in direct conflict with the literal language of factor (3) of section 7-3-6: disconnection of the subject property "will not result in the isolation of any part of the [Village] from the remainder of the [Village]." 65 ILCS 5/7-3-6 (West 2006). Austin Bank contends that the manifest weight of the evidence supports Judge Flynn's finding that the technical "isolation came about through a sham transaction engineered by lawyers for the developer and the Village for the very purpose of preventing Petitioner from exercising its statutory rights."

Our primary objective in interpreting section 7-3-6 is to "ascertain and give effect to the intent of the legislature." People ex rel. Madigan v. Kinzer, 232 Ill. 2d 179, 184, 902 N.E.2d 667 (2009). "The best indication of legislative intent is the statutory language given its plain and ordinary meaning." Kinzer, 232 Ill. 2d at 184. However, reviewing courts should guard against a statutory interpretation that conflicts with the spirit of a statute. Where "a literal interpretation of a particular clause would defeat the [legislature's] obvious

14

intent," it does not control.  Grever v. Board of Trustees of the Illinois Municipal Retirement Fund, 353 Ill. App. 3d 263, 266-67, 818 N.E.2d 401 (2004), citing In re Detention of Lieberman, 201 Ill. 2d 300, 312, 776 N.E.2d 218 (2002).  Thus, reviewing courts should not literally apply a statute if the result is a "great injustice that was not contemplated by the General Assembly." Grever, 353 Ill. App. 3d at 267, citing Robinson v. Meadows, 203 Ill. App. 3d 706, 710, 561 N.E.2d 111 (1990).  Each case under section 7-3-6 "presents its own problems, and the court can only adopt a common sense interpretation" of the statute.  Indian Valley Golf Club, Inc. v. Village of Long Grove, 135 Ill. App. 3d 543, 551, 481 N.E.2d 277 (1985).

Although disconnection of the subject property would isolate the barrier parcels, we decline to begin and end our analysis with a literal interpretation of the isolation factor of section 7-3-6.  In the context of this case, we are compelled to examine whether such a literal application would reward blatant manipulation of the factor, as Austin Bank contends.  We examine the circuit court's findings of fact to determine whether an injustice would occur should the disconnection be disallowed, where it appears the Village is unable to demonstrate any hardship or impairment.  See Grever, 353 Ill. App. 3d at 266-67. In the context of this case, we consider whether the Village's actions, as found by Judge Flynn, in creating the barrier parcels

unduly frustrated the legislative intent behind section 7-3-6, favoring disconnection. See Indian Valley, 135 Ill. App. 3d at 550 (condemning a "deliberate attempt to preclude [a petitioner] from satisfying the [factors] of the disconnection statute"); Village of Fox River Valley Gardens v. Lake County Forest Preserve District, 224 Ill. App. 3d 919, 934-35, 586 N.E.2d 813 (1992). Thus, we decline the Village's invitation to limit our analysis to a "black-and-white" or literal interpretation of the statute. We agree with Judge Flynn that a liberal construction of the factors of section 7-3-6 favoring disconnection requires that we examine whether the Village's actions amounted to a deliberate frustration of the statute's intent.

The legislature intended section 7-3-6 to liberally permit disconnection "absent a hardship or impairment to the municipality." JLR, 355 Ill. App. 3d at 668, citing Indian Valley, 135 Ill. App. 3d at 547. While courts have consistently applied this liberal interpretation of section 7-3-6, "the legislature has not altered the liberal construction given the statute." Harris Trust, 133 Ill. 2d at 154. It is against the backdrop of this liberal construction that courts have warned against the use of "mere subterfuge" or a "legal gimmick" to frustrate the purpose of statutes concerning municipal borders. See Wild v. People ex rel. Stephens, 227 Ill. 556, 561, 81 N.E. 707 (1907); Fox River, 224 Ill. App. 3d at 935.

16

Judge Flynn expressly found that "the purpose of the barrier parcels was to block disconnection of the [subject property]." This purpose triggered a direct conflict with the legislature's intent favoring disconnection. The manifest weight of the record evidence supports Judge Flynn's finding and his ruling that the tension between the isolation of the barrier parcels and the intent favoring disconnection embodied in section 7-3-6 should be resolved in favor of disconnection.

Szkaltukski's memo indicated that even in its earliest discussions with Mesirow-Stein, the Village desired to retain jurisdiction over a portion of the 1997 boundary parcel sufficient in size to prevent disconnection of the subject property. Mesirow-Stein's attorney Novak reflected the Village's intent to frustrate future attempts at disconnection by referring to the barrier parcels as "legal spite strips." The evidence demonstrates that the Village officials, Kosin and Kempe, knew that the barrier parcels were intended as a legal barrier to the disconnection of the subject property, as they explained in voicing their support for the disconnection ordinance. Kosin informed Train that the barrier parcels were intended to prevent the possible disconnection of the subject property prior to the public hearing on Mesirow-Stein's disconnection petition.

Unable to rebut the persuasiveness of the evidence as to the Village's motivation for passing the ordinance, the Village

points to the water management benefits the Village would derive from the creation of the barrier parcels.[2]  The Village argues that Judge Flynn's finding that "water management was at best an after-the-fact rationalization" is against the manifest weight of the evidence.  We disagree.

Both Kempe and Kosin testified that they did not have engineers assess the significance of any storm water management of the barrier parcels prior to the enactment of the disconnection ordiance.  Although the public hearing on Mesirow-Stein's disconnection petition focused primarily on water management, the public hearing was held after Train was told by Kosin of the barrier parcels' role as a means of protecting the Village's border.

The claimed value of the barrier parcels as aiding storm water management was a point of factual dispute before Judge Flynn.  While Gudmundson, the Mesirow-Stein engineer, testified that the barrier parcels were intended to provide storm water retention ponds that would divert water through culverts under Route 59, he offered no opinion as to the efficacy of the water retention ponds in serving that purpose.  Austin Bank's engineering expert Burke testified that only 12 acres of the

---

[2]Of course, there is no "benefit" to the Village from the existence of the barrier parcels if the subject property is disconnected.

approximately 600 in Mesirow-Stein's development drained to the barrier parcels.  According to Burke, the barrier parcels had little or no role in managing storm water.  It was well within Judge Flynn's role as finder of fact to find the Village's claimed need for the barrier parcels for storm water management as no more than an "after-the-fact" rationale.  See La Salle National Bank, 81 Ill. App. 2d at 215-16 (it was for the trial court to resolve conflicting opinions presented by the parties' expert witnesses).  Our review of the record finds Judge Flynn's characterization of this offered purpose for the barrier parcels consistent with the manifest weight of the evidence.

The Village argues that even if carving out the barrier parcels from the disconnection of the 1997 boundary property was motivated by its desire to "protect its borders," protection of a municipality's border is a legitimate concern in accord with the spirit of section 7-3-6.  Whether border protection is a proper consideration under section 7-3-6, our review of two cases, Indian Valley and Fox River, leads us to conclude that border protection may not occur by any means.

In Indian Valley, the Indian Valley Golf Club sought to disconnect property from the corporate limits of Long Grove. "[N]early a year and a half after Indian Valley filed its original petition to disconnect," Long Grove annexed a lot on the northern border of Indian Valley's property.  Indian Valley, 135

Ill. App. 3d at 548.  To avoid isolating the annexed lot, Indian Valley filed an amended petition carving out a portion of the proposed land to be disconnected to avoid violating the isolation factor regarding the annexed lot.  Indian Valley, 135 Ill. App. 3d at 548.

On review of the dismissal of the amended petition to disconnect, the appellate court reversed, concluding "that the proposed disconnection met the requisites of the statute." Indian Valley, 135 Ill. App. 3d at 551.  The Indian Valley court rejected Long Grove's claim that the annexed lot was "isolated" within the meaning of section 7-3-6 "because it is inaccessible to the village by road and, thus, incapable of being provided with police services by the village."  Indian Valley, 135 Ill. App. 3d at 548.  While the holding of the case turns on the annexed lot sharing a sufficient boundary with the carved out portion of the subject property not disconnected from Long Grove "to establish contiguity," the appellate court found Long Grove's post-petition annexation of the lot was an "offensive *** attempt to preclude Indian Valley from satisfying the [factors] of the disconnection statute."  Indian Valley, 135 Ill. App. 3d at 550. "Giving the statute the liberal construction the courts have advocated," the Indian Valley court found no isolation under section 7-3-6 to preclude disconnection.  Indian Valley, 135 Ill. App. 3d at 551.

In Fox River, the Lake County Forest Preserve District brought an eminent domain action to condemn property annexed by Fox River Valley Gardens; the annexation was agreed to by the private partnership that purchased the property. Fox River, 224 Ill. App. 3d at 921-22. The private partnership then donated to Fox River Valley Gardens a 20-foot-wide strip of land within the property the District sought to condemn, but lying "entirely within[] the bed of the river." Fox River, 224 Ill. App. 3d at 923. As its defense to the eminent domain action, Fox River argued that condemnation of this "public property" was prevented by statute. Fox River, 224 Ill. App. 3d at 922-23. The trial court dismissed the Forest Preserve District's eminent domain action. Fox River, 224 Ill. App. 3d at 924.

On review, the Fox River court found the record left "no doubt that the 20-foot strip was conveyed to the Village for the immediate and specific purpose of blocking any attempt by the District to condemn the [condemnation property.]" Fox River, 224 Ill. App. 3d at 934. As evidence supporting this finding, the court quoted from correspondence from the attorney of the private partnership that conveyed the strip of land to the village, evidence much like the evidence before us in the instant appeal. " 'The intent of the conveyances is to create an area of discontiguity between [the condemnation property] and existing or proposed publicly owned parks, forest preserves or conservation

21

areas.' " Fox River, 224 Ill. App. 3d at 934. At trial, the attorney for the private partnership made clear the motivation behind the conveyance: " 'We're here to tell you that the purpose of the deeded 20 foot strip is to protect the municipal boundary from being invaded by the Forest Preserve in the event they somehow sought to achieve contiguity ***.' *** [T]he mayor of the Village testified to essentially the same reason for the Village's acceptance of the 20-foot strips." Fox River, 224 Ill. App. 3d at 934. The court found Fox River's goal to protect its borders through a "legal gimmick" was "repugnant to the clear intent" of the legislature. Fox River, 224 Ill. App. 3d at 934-35.

The Fox River court found fatal fault with the conveyance on two grounds. First, "the Village, which is a non-home-rule municipality, may acquire and hold title to real property only for a legitimate corporate purpose. [Citation.] As a general rule, when land is acquired by a municipality, the land itself must be put to use. Here, we can think of no way in which a 20-foot-wide strip of river bottom could serve a corporate purpose in the usual sense." (Emphasis in original.) Fox River, 224 Ill. App. 3d at 934. Second, "the deed used to accomplish the donation was subject to what we perceive to be, at the very least, a questionable requirement for reconveyance at the Partnership's request." Fox River, 224 Ill. App. 3d at 936.

22

Ultimately, the Fox River court concluded "that the conveyance was a sham [that] cannot be used to prevent the exercise of the District's power of eminent domain." Fox River, 224 Ill. App. 3d at 936.

In each case, the reviewing court rejected the efforts of each municipality to protect its border through legal gimmickry. In other words, border protection may not be accomplished by any means.

Likewise here, the evidence amply supports Judge Flynn's finding that the Village's true purpose in retaining jurisdiction over the barrier parcels was to prevent disconnection of the subject property. The Village's manipulation of factor (3) of section 7-3-6 by creating "an island" of the barrier parcels from the disconnection of the 1997 boundary parcel to preclude the satisfaction of the isolation factor by Austin Bank contravenes the intent of the legislature favoring disconnection. Indian Valley, 135 Ill. App. 3d at 550. Based on the Judge Flynn's findings, we reject the Village's contention that it engaged in proper border protection.

In an effort to distinguish its actions from the actions of the municipalities in Fox River and Indian Valley, the Village argues it did not gain any new rights in the barrier parcels when the 1997 boundary parcel was disconnected; its actions did not restrict or deprive Austin Bank of any rights to the subject

property. However, as Judge Flynn noted, it was the Village's retention of jurisdiction over the barrier parcels that provided a technical legal obstacle to the disconnection of the subject property. If the entire 1997 boundary parcel had been disconnected, the Village "would not otherwise have had" a basis to complain.

Further, Fox River and Indian Valley make clear that actions by a municipality to protect its borders are subject to challenge when the actions constitute a sham or legal gimmick that stand in the way of giving deference to the legislature's intent favoring disconnection. That the Village acted in anticipation of Austin Bank's disconnection petition does not insulate its efforts from challenge. It is the improperly motivated actions that are offensive to the legislative intent. The Village's retention of the barrier parcels clearly frustrated section 7-3-6's purpose to liberally permit disconnection. See JLR, 355 Ill. App. 3d at 668; Harris Trust, 133 Ill. 2d at 154. The Village retained the barrier parcels simply to create an artificial hardship, an action we will not condone.

As a last-ditch effort to have this court reverse Judge Flynn's considered findings, the Village contends that Judge Flynn improperly made additional findings on factors (4) and (6) in his ruling following trial, even though findings under section 2-1005(d) of the Code of Civil Procedure (735 ILCS 5/2-1005(d)

24

(West 2006)) were made by Judge Flynn prior to trial.

We reject the Village's characterization of Judge Flynn's recitation of his findings during his ruling after trial on factors (4) and (6) as additional findings that went beyond what he stated in his summary judgment ruling. In its main brief, the Village contends that Judge Flynn erred by restating his finding as to factors (4) and (6) because he "barred the Village from presenting any evidence on these issues by granting summary judgment on these elements." We find no error in Judge Flynn's oral ruling that included mention of factors (4) and (6). Nor has the Village provided a single citation to authority for its claim of error. See Orzel v. Szewczyk, 391 Ill. App. 3d 283, 287, 908 N.E.2d 569 (2009) ("A party's failure to cite supporting authority is a violation of Rule 341(e)(7) [now Rule 341(h)(7)], and we may consider those issues forfeited").

Because the manifest weight of the evidence supports Judge Flynn's findings that the isolation of the barrier parcels was the result of a legal gimmick by the Village to improperly defeat Austin Bank's disconnection petition and that all other factors under section 7-3-6 were established to warrant disconnection of the subject property, we affirm Judge Flynn's order granting Austin Bank's petition on count I. Our holding reflects the Village's inability to demonstrate any "hardship or impairment" as a result of the disconnection. JLR, 355 Ill. App. 3d at 668;

see also <u>Harris Trust</u>, 133 Ill. 2d at 154.

Finally, because we affirm Judge Flynn's ruling in favor of Austin Bank on count I, we do not consider the Village's contention of error in Judge Flynn's ruling in favor of Austin Bank on count II, providing for relief to Austin Bank in the alternative.

CONCLUSION

Judge Flynn's finding that Austin Bank's disconnection petition meets the factors of section 7-3-6 was not contrary to the manifest weight of the evidence. Although disconnection of the subject property would result in the technical isolation of the barrier parcels, the Village's preemptive efforts to frustrate disconnection by retaining those parcels through legal gimmickery defeats its attempt to overturn Judge Flynn's decision. We affirm the circuit court's order granting Count I of Austin Bank's petition to disconnect the subject property from the Village's jurisdiction. Because we grant relief pursuant to Count I, we do not address the grant of alternative relief in Count II of Austin Bank's petition.

Affirmed.

HALL, P.J., and PATTI, J., concur.

**REPORTER OF DECISIONS - ILLINOIS APPELLATE COURT**

AUSTIN BANK OF CHICAGO, as
Trustee under Trust No. 4261,

Petitioner-Appellee,

v.

THE VILLAGE OF BARRINGTON
HILLS, an Illinois Municipal Corporation,

Respondent-Appellant.

**No. 1-08-2315**

**Appellate Court of Illinois**
**First District, First Division**

**Filed: November 09, 2009**

**JUSTICE GARCIA delivered the opinion of the court.**

**HALL, P.J, and PATTI, J., concur.**

**Appeal from the Circuit Court of Cook County**
**Honorable Peter Flynn, Judge Presiding**

| | |
|---|---|
| **For PETITIONER-**<br>**APPELLEE** | **John B. Murphey**<br>**Rosenthal, Murphey & Coblentz**<br>**30 North LaSalle Street, Suite 1624**<br>**Chicago, Illinois, 60602** |
| **For RESPONDENT-**<br>**APPELLANT** | **George J. Lynch**<br>**Aaron H. Stanton** |

**Daniel S. Klapman**
**Burke, Warren, MacKay & Serritella, P.C.**
**330 North Wabash Avenue, 22nd Floor**
**Chicago, Illinois   60611-3607**